164 So.2d 671 (1964)
Camille LELONG et al., Plaintiffs-Appellants,
v.
SUCCESSION OF Michel Paul LELONG, Defendant-Appellee.
No. 1142.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1964.
Rehearing Denied June 17, 1964.
*672 Watson, Williams & Brittain, by Arthur C. Watson, Natchitoches, for plaintiffs-appellants.
Bethard & Bethard, by Henry W. Bethard, III, Coushatta, for defendant-appellee.
Before TATE, SAVOY, and CULPEPPER, JJ.
TATE, Judge.
This is an action to set aside a testamentary trust. The plaintiffs are the three children of the decedent, together with a co-trustee of the trust. The defendant is another co-trustee, who is also the executor of the will creating the trust.
The plaintiffs appeal from the dismissal of their suit. Essentially, they contend that the trust should be terminated because circumstances not known or anticipated by the settlor will defeat or substantially impair the purposes for which the trust was created. See LSA-R.S. 9:2174 and 9:2175 of the Louisiana Trust Estates Law, LSA-R.S. 9:1791 et seq.
The testamentary trust created by the testator's last will provided that, after payment of expenses and of certain legacies, the "balance" of his estate should be placed in trust for ten years following the date of his death. The testator stated that he did not want his property ("inherited or bought *673 and hardly accumulated"), either the real estate or the securities, to be "dispersed for lesser values." The testator further wanted the trustees "to consider first the development of my properties, their exploitation, in a rational way, and for their expenses and reserves for the future 2/3 (two-third) of the income (property and securities) should be kept every year."[1]
The plaintiffs-appellants contend that the purpose of creating the trust evidenced by the will, was to use the income of the estate to develop the properties (8000 acres of real estate) over a period of ten years. This purpose cannot be fulfilled and the trust should be terminated, they argue, because there will be only negligible income left to develop the property in question, after the legacies and the estate taxes are paid, and after two-thirds of the trust income is diverted to the forced heirs of the testator as required by law.[2]
On the other hand, the trial court decreed, inter alia, in dismissing the plaintiffs' contentions, that the testator's provision that he wanted the trustees "to consider first, the development of my properties, their exploitation, in a rational way", was merely, in the trial court's words, "a precatory suggestion and not a mandatory instruction to the trustees, who are hereby recognized under the terms of the trust to have full authority to dispense the income from same in their sound discretion."
In effect, then, the trial court construed the intended purpose of the decedent in creating the trust simply to retain his estate intact for ten years following his death, with merely a suggestion to his trustees that they use the trust income to develop the real estate properties in a rational way.

I.
The decedent died in August 1962 possessed of an estate valued in excess of one million three hundred thousand dollars. To summarize in round figures, the decedent's gross estate included essentially the following:

 Stocks and bonds_______ $ 750,000.00
 Land (8000 acres) _____ 400,000.00
 Cattle ________________ 80,000.00
 Cash __________________ 30,000.00

The evidence also shows that the decedent's estate is subject to cash liabilities *674 slightly in excess of $500,000, including legacies and the federal estate tax ($400,000).
In order to satisfy this liability, the appellants suggest, it will be necessary either to sell two-thirds of the securities or else to borrow money upon the land, in either of which events there will be a substantial diminution in the net cash income available to develop the property and to pay the estate expenses.
The appellants also produced a summary of the decedent's income and expenses from the estate over the six years preceding his death, based upon his federal income tax returns. According to the latter, the decedent enjoyed a net income from his securities of approximately $36,000 per year, but the farming and cattle operations conducted on his land showed an annual net loss each year, varying from $6,000 in 1962 to $28,000 in 1958.
The appellants suggest, for instance, that if two-thirds of the stocks and bonds are sold in order to pay the $500,000 cash liabilities of the estate, then the annual income of $36,000 from them will be reduced by two-thirds, i.e., to $12,000, of which two-thirds must be paid to the forced heirs (see Footnote 2 above), so that the negligible sum of $4,000 will be left to pay any deficit in plantation operations and to develop the land. (The appellants produced testimony that approximately XXXX-XXXX acres of the estate were uncleared bottomlands, which according to the estimate of a contractor would take at least $75$100 per acre to clear and to convert into pasture land.)
The appellants contend that, therefore, the purpose of the trust (i.e., in their opinion, to develop the estate lands) will be substantially impaired or defeated because of circumstances not known or anticipated by the testator, namely, (1) that two-thirds of the trust income was required by law to be paid to the forced heirs, and (2) that the major share of the income-producing securities of the estate were to be sold because of a large federal estate tax liability. There would thus be no or little income to develop the trust properties; or, even, the trust would sustain an operating deficit every year, with the possibility of an eventual loss of the estate lands.
The appellants rely upon the principles summarized as follows at 89 C.J.S. Trusts § 93, p. 927: "When a trust is impossible of fulfillment the court will terminate it and have the property distributed. * * * A trust will be terminated where * * * its continuance becomes pecuniarily profitless, expensive, or hopeless. Where the accomplishment of the purposes of a trust if continued, would be impaired substantially by circumstances not known or anticipated by the settlor, the trust will be terminated." See LSA-R.S. 9:2174, 9:2175; De La Vergne v. St. Paul, 216 La. 92, 43 So.2d 229.
The appellants' contentions are extremely forceful. However, in our opinion, the trial court correctly held that they must fall.

II.
The following general legal principles are applicable herein:
"Whenever possible, that construction of a trust instrument will be favored which upholds the validity of the trust and renders the instrument effective." 90 C.J.S. Trusts § 161d, p. 20. "In construing a trust, the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy." Id. at § 162a, p. 26. "Parol or extrinsic evidence may be admitted to aid in construing a trust instrument only if the instrument is ambiguous or uncertain, and only to explain, and not to contradict, the instrument." Id. at § 165a, p. 34.
We must also here note the principle stated as follows at 90 C.J.S. Trusts § 163, p. 32: "* * * it has also been held that instruments creating trusts are to be liberally *675 construed to carry out the intention of the trustor, and that the court should construe conditions liberally, whenever it may properly do so, in order to avoid a forfeiture. So, if the creator's discernible purpose would be thwarted by a literal and strict interpretation, but would be consummated by a liberal construction, it has been held nothing but equity so to construe the instrument as to realize that purpose."

III.
Applying such principles, we think, first of all, that the trial court correctly concluded that the primary purpose of the trust was simply for the testator to have the balance of his estate retained intact for ten years, after payment of the legacies and the expenses of administration and other debts. The testator further stated that he wanted his trustees to "consider" devoting the major share of the trust income to development and exploitation of his properties in a rational way, but he did not direct them to do so. The precatory recommendation that the trustees use the income to develop the estate, thus, does not constitute the trust's primary purposewhich, rather, was the testator's desire to avoid the sale or division of the net balance of his real estate and securities for a period of ten years.
Whether we regard this purpose as selfish, unwise, or even unprogressive has no bearing upon this case. Under the trust concept, which has been brought into Louisiana's civilian jurisdiction from the common law, and which has been given sanction by the Constitution and the legislature, the settlor has the prerogative of so acting, and the courts must respect and give validity to the intention of the settlor in interpreting the instrument creating the trust. As stated at LSA-R.S. 9:1841, "The settlor shall have the right to create the trust subject to any conditions not herein denied to him"; and the primary restrictions on the settlor's power invalidate trusts only if illegal or contrary to public policy, LSA-R.S. 9:1842.
We further note that, so far as the record shows, it is merely a supposition that the testator did not anticipate a large federal estate tax liability. There is no evidence to indicate so. If the trust was created primarily to retain intact for ten years the testator's estate, his prior recognition in his will that his "regular expenses and bequeaths" should be paid before putting the "balance" of his estate into the trust, is of course consistent with his recognition that a large estate tax liability must first be paid before the remainder only of the estate, to be retained intact thereafter, was to be placed in trust.
We affirm the holding of the trial court as to the intended purpose of the testamentary trust.

IV.
Further, at this time, the evidence falls far short of indicating that in fact the income available to the trust will be so much reduced as argued by the appellants.
The testator died in August of 1962. The inventory values of the securities and land were estimated as of November 1962. The evidence taken at the trial was as of April 1963.
That is, the record reflects merely estimates of witnesses that the farming operations of the trust will result in losses, and that the income from securities will be reduced by two-thirds. In actual fact, at the time of the trial, no securities had been sold to pay off the cash liabilities, nor had the trust conducted farm and cattle operations for more than a few months.
As suggested by the questioning of the witnesses, the value of the estate's securities was subject to fluctuation, and there were variable rates of return upon them. The evidence does not prove to what actual extent the income of the trust will be reduced after assets have been sold to pay the cash liabilities of the estate.
*676 Further, the testator indicated only that after his "regular expenses and bequeaths" were paid, the "balance" of his estate was to be put into a trust in order to avoid sale or division of either the real estate or the securities. Although there is an order in the record permitting the executor to sell some of the securities in order to pay part of the estate's cash liability, it is to be noted that the will does not actually provide that the income-producing securities should be retained intact any less than the loss-producing real estate, nor under Article 3262 of the new LSA-Code of Civil Procedure is the executor required to exhaust movables before selling immovables.
Until the expenses of settling the estate and the legacies have actually been paid, and the balance of the estate has been turned over to the trust; and until there has been some actual experience in managing the properties under the trust; this court cannot say, and the evidence does not prove, that the income of the trust will be so insufficient that the purpose of the trust will be defeated or substantially impaired.
On the other hand, under the evidence it is quite possible that, when the decedent's estate is settled and the remainder of the property is actually turned over to the trust, the remaining assets and the resulting income and expenses of the trust may indeed indicate that its future operations are so unprofitable as to afford the forced heirs grounds for its termination under LSA-R.S. 9:2174 and 9:2175.
We will therefore clarify the trial court decree by amending it to dismiss as of non-suit the plaintiffs-appellants' suit to terminate the trust.
Further, we expressly note that no contention has been raised in these proceedings (nor, for the reasons set forth above, can it be, until the corpus of the trust is finally determined), that the legitime of the forced heirs has been impinged, in contravention of LSA-R.S. 9:1793 and of Louisiana Constitution Article IV, Section 16 as amended in 1962, by constituting the forced heirs principal-beneficiaries only of a non-income producing trust. Cf, Comment, 37 Tul.L.Rev. 710, 742-752 (1963).
Decree.
For the foregoing reasons, the trial court judgment dismissing the plaintiffs' suit to terminate the trust is amended so as to provide that the dismissal be as of nonsuit; as thus amended, the trial court judgment is affirmed in all other respects.
Affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.
NOTES
[1] The pertinent language creating the trust, in full, provides: "* * * I want the balance of my estate put in trust like it is for ten yearsnot wishing my real estate to be divided or sold and neither the securities, inherited or bought and hardly accumulated dispersed for lesser values, and if for necessity are to be sold, I suggest that Standard and Poor's Corporation be consulted. As trustees of my estate, I appoint Judge Paul Stephens, whose voice will always prevail, and H. C. Teacle, Vice President of the 1st Nat. Bank, Shreveport, La., and Charles Lelongand Camille Lelong. I want them to consider first, the development of my properties, their exploitation, in a rational way, and for their expenses and reserves for the future, 2/3 (two-third) of the income (property and securities) should be kept every year which means, that after taxes, expenses on the properties, expenses of the trust, and cash reservethe balance 1/3 could be distributed to my heirs, if conditions allow it. This trust should last ten years after the day of my death. * * *"
[2] The will had further provided that, after two-thirds of the income was kept to develop the property, the other one-third of the income from the trust "could be distributed to my heirs, if conditions allow it." See Footnote 1 above, for text in full. The trial court modified this trust provision and held that the three children of the settlor were entitled, as his forced heirs, to be paid annually two-thirds of the income produced by the trust property, since payment of income to them in a lesser amount infringed on their legitime in violation of LSA-R.S. 9:1793. See LSA-Constitution Article IV, Section 16, as amended in 1962; also Comment, Forced Heirs * * *, 37 Tul.L.Rev. 710, 742 ff. (1963). The defendant-appellee does not on appeal question this modification of the trust.