11 LEON A. CANNIZZARO, JR., Judge.
This case involves an appeal by the plaintiff from the trial court’s judgment denying his claim that the defendant owes the plaintiff compensation for the defendant’s failure, and the failure of its predecessors, to invest certain trust funds for the benefit of the plaintiff. The plaintiff is one of the beneficiaries of a trust for which the defendant is trustee. For the reasons that follow, the trial court judgment is affirmed.

FACTS AND PROCEDURAL HISTORY

On June 20, 1965, the State Mineral Board of the State of Louisiana (the “Mineral Board”) entered into an Agreement of Trust (the “Trust Agreement”) with National American Bank of New Orleans (“National American Bank”), a national banking corporation domiciled in New Orleans, Louisiana. The Trust Agreement established a trust pursuant to the provisions of La. R.S. 30:188(B)(2).[1] The Mineral Board was the settlor of the trust, National American Bank was the trustee, and the beneficiaries of the trust were the owners of the properties covered |2by the Trust Agreement and any other persons entitled to receive royalties from the properties.
Since the trust was established, National American Bank, the original trustee of the trust, converted to a state chartered bank and changed its name to American Bank & Trust Company. Subsequently, American Bank & Trust Company changed its name to Alerion Bank. Alerion Bank merged into Premier Bank, N. A, and later changed its name to Bank One, Louisiana, N.A., which ultimately transferred its trust functions to Bank One Trust Company, N.A. Bank One Trust Company, N.A. has succeeded to all of the rights and obligations of its predecessor trustees under the Trust Agreement.
The Trust Agreement covers mineral leases affecting a tract of land in St. Mary *17 Parish, Louisiana.[2] Pursuant to the provisions of the Trust Agreement, royalties derived from those leases were distributed to the trust beneficiaries by the trustee under the Trust Agreement. The Trust Agreement established four accounts with respect to the St. Mary Parish mineral leases entitled as follows: “Mineral Board Trustee’s Gonsoulin Account” (the “Gon-soulin Account”); “Mineral Board Trustee’s General Administration Account” (the “General Administration Account”); “Mineral Board Trustee’s Escrow Account” (the “Escrow Account”); and “Mineral Board Trustee’s Gonsoulin Administration Account” (the “Gonsoulin Administration Account”) [3].
laThe Gonsoulin Account initially consisted of funds, to which the trust beneficiaries were entitled, that were being held by the Mineral Board at the time the trust was created. The Trust Agreement also provided that when royalties on the St. Mary Parish leases were received, those royalties ultimately were to be placed in this account. Ninety percent of the royalties were retained in the account, and the Trust Agreement provided that they were to be distributed to the beneficiaries annually.[4]
The General Administration Account consisted of funds that were being held by the Mineral Board at the time the trust was created for the purpose of administering the leases that were placed in trust. If the funds in the Gonsoulin Administration Account were less than the amount the trustee was entitled to retain for its own account, the deficiency was to be paid to the trustee from the General Administration Account.
The Escrow Account was established so that all future income received by the Mineral Board from the St. Mary Parish leases could be deposited into it. After the income was deposited, ninety percent of the income was transferred into the Gon-soulin Account, and ten percent was transferred into the Gonsoulin Administration Account.
The Gonsoulin Administration Account was established to receive ten percent of the future income from the St. Mary Parish leases after the income had been deposited into the Escrow Account. The funds in this account were used to compensate the trustee for its trust services and to reimburse it for related expenditures.
14At the time the Mineral Board established the trust, the funds it held with respect to the leases covered by the trust were placed in the trust accounts. The royalties owed to the beneficiaries at the time the trust was established were deposited into the Gonsoulin Account, and the funds that had been held by the Mineral Board to administer the leases were deposited into the General Administration Account. All royalties received after the *18 trust was established were initially deposited into the Escrow Account, from which they were then transferred into the Gon-soulin Account and the Gonsoulin Administration Account. Ninety percent of the royalties were transferred from the Escrow Account into the Gonsoulin Account, and ten percent of the royalties were transferred into the Gonsoulin Administration Account. The funds in the Gonsoulin Account were paid to the beneficiaries at least annually, and the funds in the Gon-soulin Administration Account were used to pay the fees and the expenses incurred in administering the trust.
The Trust Agreement provided that the amounts in the General Administration Account were to be “invested in one (1) year time certificates of deposit, paying interest at the rate of four and one-fourth (4 % per cent per annum”. The interest was to be credited to the account. The Trust Agreement was otherwise silent as to the payment of interest on any of the other accounts established pursuant to the Trust Agreement.
On December 9, 1993, Mr. William 0. Bonin filed suit against Alerion Bank alleging that the trustee breached its fiduciary obligations to him by failing to pay interest on the amounts deposited for his benefit into the Gonsoulin Account. Mr. Bonin subsequently supplemented his petition to include as defendants Bank One Trust Company, N.A. and all of its predecessor trustees of the trust.
|fiOn October 11, 1996, Mr. Bonin filed a Motion for Summary Judgment on the Issue of Liability, and on December 2, 1996, the trial court rendered a judgment denying the motion. Mr. Bonin then filed a Motion in Limine and Rule to Show Cause requesting the trial court to issue an order denying the defendant the right to use parol evidence at trial to show the intention of the parties to the Trust Agreement regarding the investment of the trust funds. The motion in limine was denied in a judgment rendered by the trial court on May 8,1997.
This case was tried on April 1, 2002, and a judgment in favor of Alerion Bank was rendered on April 15, 2002. The judgment was subsequently amended on May 9, 2002, to provide for a judgment in favor of Bank One Trust Company, N.A. Mr. Bonin is appealing the trial court’s judgment.

DISCUSSION

The key issue presented on appeal is whether the trustee was obligated to pay interest to Mr. Bonin under the terms of the Trust Agreement. In the instant case, the Trust Agreement expressly provided that the funds held in the General Administration Account were to be invested, and the Trust Agreement specified the investment vehicle to be used. The Trust Agreement was silent regarding the investment of the funds in any of the other accounts established by the Trust Agreement:,
The Trust Agreement also provided that “[t]o the extent not specifically covered herein, this agreement shall be governed when applicable, by the Louisiana Trust Code”. Mr. Bonin, therefore, argues that under the provisions of La. R.S. 9:2090[5], the trustee was required to invest all idle funds held in the trust |fiaccounts. La. R.S. 9:2090, which is part of the Louisiana Trust Code, requires a trustee to exercise the skill and care a man of ordinary prudence would exercise in dealing with his own property.
*19 The “prudent man rule” set forth in La. R.S. 9:2090 does not, however, require the investment of trust funds if the settlor of a trust does not intend for those funds to be invested. The “prudent man rule” applies to the administration of the trust in accordance with the intent of the settlor.
In In re James C. Atkinson Clifford Trust, 2000-0235 (La.App. 1 Cir.6/23/00), 762 So.2d 775, the Court stated:
In construing a trust, the settlor’s intention controls and is to be ascertained and given effect, unless opposed to law or public policy. Parol or extrinsic evidence may be admitted to aid in construing the trust instrument only if the instrument is ambiguous and uncertain and only to explain, not contradict the instrument. Id. at 3 and at 776.
See also In re Merlin A. Abadie Inter Vivos Trust, 483 So.2d 1292 (La.App. 4th Cir.1986); Lelong v. Succession of Lelong, 164 So.2d 671 (La.App. 3d Cir.1964).
At the trial, Mr. Jerome B. Glynn, a former trust department employee of National American Bank and Alerion Bank, testified that he was in charge of the day-to-day administration of the trust from its inception until his retirement. He testified that he and the officer in charge of the National American Bank Trust Department discussed what they would advise the bank as to the payment of interest on the accounts other than the General Administration Account, for which interest was specifically required by the Trust Agreement. Mr. Glynn testified that he and the officer in charge of the trust department determined that they were not going to pay interest on any of the trust accounts except the General Administration Account, because “we determined that the work we were going to do for the fee that we were going to offer the Mineral Board would not justify us |7charging that low a fee and paying interest too.” Mr. Glynn also testified that the Mineral Board never conveyed to him any criticism regarding the nonpayment of interest to the beneficiaries, although the Mineral Board received routine accountings from the trustee. Finally, Mr. Glynn testified that he attended a Mineral Board meeting in the 1980’s at which there was a discussion regarding the payment of interest on the beneficiary accounts established by the Trust Agreement and that after the meeting, the bank’s position as to the payment of interest on those accounts remained the same as it had always been.
Mr. Edward Boyle, an attorney who represented National American Bank, also testified at the trial. He said that when he had been engaged in negotiations with the Mineral Board in the 1980’s on other issues involving the trust, there were never any discussions regarding the fact that interest was not being paid to the beneficiaries.
Ms. Sandra Bailey, the Deputy Assistant Secretary for the Louisiana Office of Mineral Resources, also testified at the trial. She testified that the Office of Mineral Resources “functions as a staff for the State Mineral Board.” Ms. Bailey testified that she was familiar with the Trust Agreement and that she had familiarized herself with it by researching the Mineral Board records. Based on her research, Ms. Bailey stated that historically the trustee had not paid interest on any of the accounts established by the Trust Agreement except for the General Administration Account. She further testified that she saw nothing in the Mineral Board records indicating that the Mineral Board ever complained to the trustee about the nonpayment of interest on any trust accounts.
*20 In its Reasons for Judgment the trial court considered La. Civil Code art.2045, which provides that the common intent of the parties is to be used to |sinterpret a contract, and La. Civil Code art.2050, which provides that each provision of a contract is to be interpreted in light of the contract’s other provisions so that the contract is given the meaning suggested by the contract as a whole. The trial court considered that the Trust Agreement established a number of separate accounts but contained a provision that provided for the payment of interest on only one of the accounts. The trial court stated in the Reasons for Judgment that “[t]his court interprets the exclusion of similar provisions as to all the other accounts as a lack of intent by the settlor to create such a condition.”
The trial court then stated in its Reasons for Judgment that it had considered the testimony of Mr. Boyle and Mr. Glynn and found that their testimony that interest was not to be paid to the trust beneficiaries in exchange for a reduced fee structure was credible. The trial court held that the parties to the Trust Agreement did not intend for interest to be paid on the Gonsoulin Account.

CONCLUSION

We find that the trial court reached the correct result in concluding that Mr. Bonin was not entitled to the payment of interest on the amounts held in the Gonsoulin Account for his benefit. Therefore, we affirm the judgment of the trial court.
AFFIRMED.

. La. R.S. 30:188(B)(2) permits the Mineral Board to create one or more trusts and to transfer to one or more trustees the Mineral Board's rights and duties under mineral leases of land that is owned in indivisión by five hundred or more persons for the benefit of the landowners.

. The Trust Agreement originally affected mineral leases of land in both St. Mary Parish and Jefferson Parish. The mineral production attributable to the Jefferson Parish land has terminated, and the trust provisions affecting leases of that land are not at issue in this case.

. The Trust Agreement established separate accounts for the leases of the St. Mary Parish property and the Jefferson Parish property. In the Trust Agreement, the accounts related to the Jefferson Parish leases are referred to as the "Boutte” accounts, and the accounts related to the St. Mary Parish leases are referred to as the "Gonsoulin” accounts. The "Boutte” accounts are not at issue in this case. The plaintiff is one of a large number of beneficiaries of the leases of the St. Mary Parish property and receives payments from one of the Gonsoulin accounts.

.These percentages have been changed pursuant to a recent amendment of the Trust Agreement.

. Mr. Bonin also cites in his brief La. R.S. 9:2127, which establishes the standard of a care a trustee is to use in investing trust assets.