217 So.2d 385

**ST. CHARLES LAND TRUST, ACHILLE GUIBET et al., (Trustees Applying for Instructions)**

v.

**J. O. ST. AMANT, Ex-Officio Inheritance Tax Collector.**

No. 49132.

Dec. 16, 1968.

Rehearing Denied Jan. 20, 1969.

Norman J. Pitre, Luling, for defendant-appellee.

Jack P. F. Gremillion, Atty. Gen., John L. Madden, Asst. Atty. Gen., for amicus curiae.

Deutsch, Kerrigan & Stiles, René H. Himel, Jr., New Orleans, for plaintiffs-respondents.

SANDERS, Justice.

The trustees of the St. Charles Land Trust, holders of mineral interests in St. Charles Parish, applied to the Court for instructions pursuant to LSA–R.S. 9:2233.[1] They seek authority to transfer a deceased beneficiary's interest in the trust under the order of a court of California, where the beneficiary was domiciled, without ancillary succession proceedings or the payment of inheritance taxes in Louisiana.

The district court instructed the trustees that the decedent's beneficial interest was incorporeal, immovable property, subject to Louisiana inheritance taxes and transferable only pursuant to ancillary succession proceedings in this state.

The Court of Appeal reversed and instructed the trustees that the decedent's beneficial interest was incorporeal, movable property, exempt from Louisiana inheritance taxes and transferable upon the order of the California Court. Judge Chasez dissented from these instructions. La.App., 206 So.2d 128.

1. LSA–R.S. 9:2233 is a procedural provision of the Louisiana Trust Code (1964) applicable to preexisting trusts. See LSA–R.S. 9:2252, as amended.

On application of the Inheritance Tax Collector, we granted certiorari to review the judgment of the Court of Appeal. 251 La. 1058, 208 So.2d 327. In this Court, the State of Louisiana through the Attorney General appeared as *amicus curiae* to support the position of the Inheritance Tax Collector.

The St. Charles Land Company, a Maryland corporation, owned mineral leases and servitudes on lands located in St. Charles Parish, Louisiana. An amendment to its Articles of Incorporation adopted by its shareholders provided that in the event of liquidation the directors could transfer the corporate property to a trust for the benefit of the shareholders. Acting under this authority, the liquidator transferred the mineral leases and servitudes to the trustees of the St. Charles Land Trust for the benefit of the former shareholders. The transfer in trust was made by an authentic act entitled "Transfer and Trust Instrument" dated April 2, 1962. The instrument designated the shareholders as beneficiaries for both principal and income in the same proportion as their former stock ownership.

Under the terms of the trust instrument, the sole purpose of the trust is to conserve the trust estate and distribute the income to the beneficiaries after the payment of expenses. The trustees are prohibited from engaging in the development of mineral property or other business activities. They are also prohibited from acquiring new properties. The trustees can sell or dispose of trust property with the approval of 75% in interest of the beneficiaries. They can cancel an existing lease and grant a new lease with the approval of 66⅔% in interest of the beneficiaries. The term of the trust is fixed as "the maximum period permitted by present or future laws of Louisiana" subject to the right of the trustees to terminate the trust at an earlier time.

The instrument further provides:

"The interests of the beneficiaries are classified as movable property, notwithstanding that the trust estate consists in whole or in part of immovable property; provided that the trustees shall have the right, but shall not be bound, to require as a condition precedent to recognition of the validity or effectiveness of any transfer of the interest of a beneficiary, compliance in respect thereof with the formalities attendant on like transfers of immovable property."

Mrs. Ella E. Watkins, a beneficiary, died in California where she was domiciled on October 28, 1965. She left no forced heirs. In due course, a California court granted an order as to the Louisiana trust interest.

Louisiana levies a tax on inheritances. As to the scope of the tax, LSA–R.S. 47:-2404 provides:

"Except to the extent of the exemptions provided in R.S. 47:2402 the tax

shall be imposed with respect to all property of every nature and kind included or embraced in any inheritance legacy or donation or gift made in contemplation of death, including all immovable property and all tangible movable property physically in the State of Louisiana, whether owned or inherited by, or bequeathed, given, or donated to a resident or nonresident, and whether inherited, bequeathed, given or donated under the laws of this state or of any other state or country. The tax shall also be imposed with respect to all movable property, tangible or intangible, owned by residents of the State of Louisiana, wherever situated; provided that the tax shall not be imposed upon any transfer of intangible movable property owned by a person not domiciled in this state at the time of his death."

 Under the above provision, the inheritance of a non-resident's immovable property, tangible or intangible, situated in this state is taxable. The inheritance of intangbile movable property owned by a non-resident is immune from the tax.

The trustees assert that the beneficiary's interest in the trust, like that of a corporate stockholder, is an incorporeal movable, both under the terms of the trust instrument and Louisiana law. Hence, they reason, the interest is free from Louisiana inheritance taxes.

The opponents first assert the instrument relied on created no trust, but rather a partnership or agency. Alternatively, they contend the beneficiary's interest in the trust is an immovable under Louisiana law. Hence, they submit, the Louisiana inheritance tax law applies.

 A trust is a relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. Former LSA–R.S. 9:1792(16); 1 Bogert, Trusts and Trustees, § 1, p. 1 (1951); 1 Scott on Trusts, § 2.3, pp. 37–38 (1967); Oppenheim, A New Trust Code for Louisiana, 39 Tul.L.Rev. 187, 197–198.

At the time of the execution of the instrument in contest, the applicable statute was the Trust Estates Act of 1938, as amended (former LSA–R.S. 9:1791–2212). In LSA–R.S. 9:1811, the statute provided:

"A trust shall be created when a person * * * in compliance with the provisions of this Chapter transfers the legal title to property to a trustee in trust for the benefit of himself or a third person."

 No particular language is required to create a trust. Former LSA–R.S. 9:1815. It suffices if the instrument as a whole reflects the intent to establish a trust relationship. When it can reasonably do so, the Court will construe the trust instrument to sustain the validity of the trust.

See Lelong v. Succession of Lelong, La. App., 164 So.2d 671 and 90 C.J.S. Trusts § 161h, p. 24.

■ Our examination of the instrument in contest here discloses that it transfers legal title of the property to the trustees, defines their duties and powers as fiduciaries, designates the shareholders as income and principal beneficiaries, and fixes the term of the trust as the maximum period permitted by law. The trustees appeared in the instrument to accept the trust.

The trust opponents contend the limitations on the trustees' powers thwarted the creation of a trust and converted the relationship to a partnership or agency. They refer to the limitations on the sale of trust property, cancellation of leases, and other business transactions. The sale of trust property and cancellation of leases, as we have noted, requires the approval of a designated percentage of the beneficiaries. Although the power limitations are substantial, we find nothing in the Trust Estates Law of 1938 to prohibit them. Specifically, LSA–R.S. 9:1941 provided that the duties and powers of the trustees could be fixed by the terms of the trust. The settlor, under LSA–R.S. 9:1841, could stipulate any conditions not prohibited by law.

■ The relationship has all the features of a trust and lacks certain essential features of both partnership and agency. A partnership is created by contract among the partners. LSA–C.C. Art. 2801. The beneficiaries were not parties to the trust instrument. Clearly, therefore, there can be no contract of partnership among them.

■ The contention that the relationship is a mandate, or agency, rather than a trust, is equally weak. Without attempting to enumerate all the distinctions between a trust and agency, we note that the trust instrument vests title to the property in the trustees in a relationship that is neither terminable at the will of the beneficiaries nor upon the death of any of them. In an agency, on the other hand, title to the property normally remains in the principal and the mandatary has the power to bind the principal by contract. LSA–C.C. Art. 3021. An agency terminates upon the death or at the will of the principal. LSA–C.C. Art. 3027.

We conclude, as did the Court of Appeal, that the instrument creates a trust.

The classification of the beneficiary's interest in the trust in terms of recognized property concepts raises difficult questions. This classification has been the subject of much controversy in the common law. See 1A Bogert, Trusts and Trustees, § 183, pp. 174–179 (1951) and 2 Scott on Trusts, § 130, pp. 1050–1062 (1967). To remove uncertainty, a number of states have enacted statutory provisions classifying the interest. See 1A Bogert, supra, § 184, pp. 179–182.

■ Louisiana trust laws contain no provision classifying the principal beneficiary's interest as movable or immovable. It is quite clear, however, that the trustees hold title to the property for the benefit of the income and principal beneficiaries. Furthermore, upon the death of a principal beneficiary, his interest vests in his heirs, subject to the trust. Former LSA-R.S. 9:-1921. Hence, it may be said that the principal beneficiary's interest is an incorporeal right enforceable at law. But fixing title in the trustees does not resolve the question of whether the beneficiary's incorporeal right is movable or immovable. Since the trust laws are silent, a resolution of the question depends upon basic property concepts of the Louisiana Civil Code and related statutes.

Article 470 of the Louisiana Civil Code provides:

"Incorporeal things, consisting only in a right, are not of themselves strictly susceptible of the quality of movables or immovables; nevertheless they are placed in one or the other of these classes, according to the object to which they apply and the rules hereinafter established."

■■ Under Louisiana law, the mineral leases and servitudes held by the trustees are immovable property. LSA-C.C. Art. 471; LSA-R.S. 9:1105; Succession of Simms, 250 La. 177, 195 So.2d 114. Since the trust is upon such property, the object to which the beneficial interest applies is immovable property. Hence, under the above code article, the right itself is immovable, unless the right is excepted from this classification by other code articles. LSA-C.C. Art. 470; Yiannopoulos, Civil Law of Property, §§ 60, 61, pp. 178–182 (1966); 2 Aubry & Rau, Property, § 165 (20), p. 35 (English translation by the Louisiana State Law Institute).

Louisiana Civil Code Article 471 provides that a usufruct of immovable things, a servitude on an immovable estate, and an action for the recovery of an immovable estate or an entire succession "are considered as immovable from the object to which they apply." The language of this article and its history leave no doubt that the immovable rights mentioned are illustrative and not exclusive. See Yiannopoulos, supra, § 61, pp. 180–181 and the authorities cited. For this reason, other rights may be classified as immovable when they apply to an object that is immovable.

■ The trustees contend, however, that the trust interest is classified as a movable by Article 474 of the Louisiana Civil Code. That article declares movable "shares or interests in banks or companies of commerce, or industry or other speculations, although such companies be possessed of immovables."

The provision creates a special exception to the general rule of Article 470. The ex-

ception originated in Article 529 of the Code Napoleon. The codal language refers to shares or interests in business organizations, such as corporations or partnerships. Yiannopoulos, supra, § 66, pp. 194–195; 2 Aubry & Rau, supra, § 165(31), pp. 39–40; 1 Planiol, Traite Elementaire De Droit Civil No. 2260, pp. 335–336 (English Translation by the Louisiana State Law Institute). The trust is a unique institution of Anglo-American origin. It has a wide variety of uses in making dispositions of property, especially in estate planning. It may contain any conditions not forbidden by law or public policy. See, generally, Rubin and Rubin, Louisiana Trust Handbook (1968) and 1 Scott, supra, § 1, pp. 3–5. Based upon any type of property susceptible of private ownership, a trust can be created either by testament or *inter vivos* transfer. Although we respect analogy in codal application, we are of the opinion the beneficial interest in the trust does not fall within the exception of Article 474.

■ Finally, the trustees rely on the clause of the trust instrument itself which classifies the beneficiary's interest as movable. It is true, as contended by the trustees, that such clauses are recognized and enforced in some common law jurisdictions. In essence, these clauses are applications of the doctrine of equitable conversion. See 1A Bogert, supra, § 185, pp. 182–184. We find no sound basis in Louisiana law for enforcing such a clause against the

■

State of Louisiana. To give it effect here, moreover, would permit the parties to a trust instrument to upset long-established, legislative property classifications to the prejudice of state tax agencies, though the State is a stranger to the instrument.

■ We hold that the principal beneficiary's interest in the trust is an incorporeal immovable for Louisiana inheritance tax purposes.

Recognizing its interest in protecting the rights of local creditors and in assuring proper administration of its tax laws, Louisiana has for many years required ancillary probate proceedings when a non-resident dies leaving property situated in the state. See LSA–C.C.P. Book VI, Title IV: Ancillary Probate Procedure (Introduction); Bender v. Bailey, 130 La. 341, 57 So. 998; Succession of De Roffignac, 21 La.Ann. 364; and Heirs of Henderson v. Rost, 15 La.Ann. 405.

■ Since we have determined that the decedent owns immovable property situated in Louisiana, it follows that the codal provisions relating to ancillary probate procedure apply. LSA–C.C.P. Arts. 2811, 3401.

For the reasons assigned, the judgment of the Court of Appeal is reversed, and the judgment of the district court is reinstated and made the judgment of this Court.

FOURNET, C. J., concurs in the result.

BARHAM, Justice (dissenting).

The majority properly concludes that the instrument under consideration created a valid trust. The question for resolution is the nature of the principal beneficiary's interest in that trust. For more precise resolution is the query: Is the quality of the beneficiary's interest in the trust governed by the nature of the property owned by the trust?

Civil Code Articles 470, 471, 474, and 475 determine the quality of the beneficiary's interest. Article 470 provides that incorporeal things take on the quality of movables or immovables " * * * according to the object to which they apply and the rules hereinafter established". The majority correctly finds that Article 471 is merely illustrative and not exclusive in enumerating certain incorporeable immovables. However, the majority contends that Article 474, which says that "Things movable by the disposition of the law, *are such as* * * *", is a special exception to Article 470. This is error, for Article 474 by its very language is merely illustrative of incorporeal movables and not exclusive, just as Article 471 is illustrative but not exclusive of incorporeal immovables. Yiannopoulos, 1 Louisiana Practice (Civil Law of Property), § 66, p. 193.

The majority has failed to apply what I believe to be a most important codal provision in determining the qualities of movables and immovables—i. e., Article 475, which states: "All things corporeal or in-corporeal, which have not the character of immovables by their nature or by the disposition of the law, according to the rules laid down in this title, are considered as movables." It is to be seen, then, that under Article 475 all incorporeal things are movables which are not specifically identifiable as immovables from the nature of the object to which they apply or not designated by law as immovables. In short, under our law movables form the residual category. Yiannopoulos, op. cit. supra, § 64, p. 189.

The incorporeal interest of the beneficiary is not one of those immovables enumerated in Article 471 (usufruct and use of an immovable, servitude on an immovable, action to recover an immovable or the entirety of a succession), nor is it analogous to those others not named but included by implication (ownership, habitation, etc., of an immovable). If the beneficiary's interest is not an immovable according to the object to which it applies, as indicated by Article 471, and if special disposition or fiction of law has not classified it immovable, this court is obligated to conclude under Article 475 that it is an incorporeal movable.

The majority has erred by disregarding the legal personality of the trust and by treating the mineral leases owned by the trust as the "object" of the beneficiary's interest. The majority has destroyed the entity of the trust, which is the only and

real "object" of the beneficiary's interest, and has incorrectly treated the mineral leases owned by the trust as the "object" of the beneficiary's interest. It is true that the ownership of the mineral leases which is the right vested in the trust is an incorporeal immovable right, *but this is not the right vested in the beneficiary*. The majority has found her right to be " * * an incorporeal right enforceable at law". The beneficiary does not *own* the mineral leases, nor does she possess any other immovable right in them while the trust exists.

I believe this reasoning alone adequately fixes her interest as an incorporeal movable, but this conclusion is buttressed by the use of analogy in the application of Article 474. That article, being merely illustrative of incorporeal movables, necessarily includes the beneficiary's interest in a trust, which is analogous to " * * * shares or interests in banks or companies of commerce, or industry or other speculations, although such companies be possessed of immovables depending upon such enterprises".*

* Article 474 continues: " * * * Such shares or interests are considered as movables with respect to every associate as long only as the society is in existence;

Yiannopoulos says: " * * * Although shares or interests in various associations could be regarded as either movable or immovable property depending on the type of property owned by the association, Article 474 indicates that these shares or interests are movable 'although such companies be possessed of immovables.' * * *" Yiannopoulos, op. cit. supra, § 66, p. 194. He further points out that in Louisiana all associations are to be considered as included within Article 474. In the absence of recognition of trusts in our civil law sources as well as in our own law at the time of the adoption of this article, obviously trusts could not have been included by name, but just as obviously trusts are meant to be included by analogy.

I conclude that the interest of the beneficiary in the trust is an incorporeal movable right, and that the character of the property owned by the trust does not affect the nature of that interest. I respectfully dissent.

Rehearing denied.

BARHAM, J., dissents from the refusal of a rehearing.

> but as soon as the society is dissolved, the right, which each member has to the division of the immovables belonging to it, produces an immovable action."