MORIAL, Judge.
Countdown, Inc., was incorporated under the laws of Louisiana for the object and purpose of providing “an agency to act and serve as agent for any person * * * to carry, transport, and convey United States currency * * * to and from any and all premises or inclosures lawfully established by any commission * * * conducting therein or thereon the business of racing horses * * * in competition for money; and * * * make or place bets or wage[r]s upon or in the aforesaid premises or inclosures, as directed by or in the name of any such principals or clients, in the manner prescribed by law and in accordance with the rules, regulations and customs promulgated and set forth by any such aforesaid commission, * *
In conformity with its objects and purposes Countdown enacted terms, conditions, rules, and regulations of its agency. These were printed on the reverse of the receipt issued each customer and read as follows:
% ‡ sfc ‡ ‡ sfc
“Countdown, Inc., provides agents to place bets or wagers through the parimutuel wagering system on the result of horse races conducted on the grounds of any enclosed race track which is licensed by the Louisiana State Racing Commission to conduct a race meeting or meetings.
“Any money paid to Countdown, Inc., does not constitute a bet or wager but only as a grant of authority to Countdown, Inc., its agents, employees, or servants to place such money in the parimutuel pool of any enclosed race track which is licensed by the Louisiana State Racing Commission to conduct a race meeting or meetings.
“Countdown, Inc., in consideration for providing the messenger service stated above, charges a fee of ten percent (10%) of the amount to be placed in the parimutuel pool of an enclosed race *636 track which is licensed by the Louisiana State Racing Commission to conduct a race meeting or meetings.
“(1) The ten percent (10%) messenger service fee shall be collected irrespective of the official result of any horse race or races on which a patron wagers or bets.
“(2) Should any such patron win, agents of Countdown, Inc., shall cash in such winning ticket at a cashier’s window on the grounds of any such authorized race track and any such patron shall be paid the full sum of any such winnings in exchange for his receipt; except where Social Security Number is required to cash in such winning ticket, in which event agents of Countdown, Inc., shall deliver such winning ticket to patron in exchange for his receipt.
“(3) Should any such patron lose, agents of Countdown, Inc., shall, on demand of any such patron, deliver any and all losing tickets to such patron in exchange for his receipt.
RULES AND REGULATIONS
“(1) SCRATCHES.
(A) Any horse which is scratched or declared from any race which is conducted on the grounds of an authorized race track after twelve o’clock (12:00) noon on the day when such horse race or races is scheduled to run shall be deemed a ‘late scratch.’ With respect to a ‘late scratch,’ the messenger service fee of ten percent (10%) of the amount to be placed in the parimutuel pool of any such authorized race track shall be non-refundable; the amount of the wager or bet shall, however, be refunded to any such patron in exchange for his receipt.
(B) Scratch or declaration of a part of an entry, if scratched or declared after twelve o’clock (12:00) noon on the day when such horse race or races is scheduled to run, shall not revoke the agency of any duly authorized agent, employee, servant, or representative of Countdown, Inc., to place the full amount of the wager or bet on the remaining part of any such entry in the parimutuel pool of an authorized race track.
“(2) JOCKEY CHANGES.
No change or transfer of jockey or jockies, if such change or transfer is made after twelve o’clock (12:00) noon on the day when any such horse race or races is scheduled to run, shall revoke the agency of any duly authorized agent, em-loyee, servant, or representative of Countdown, Inc., to place the full amount of the wager or bet on the horse selected by the patron.
“(3) EQUIPMENT CHANGES.
No change of equipment (e. g., adding blinkers to equipment or discontinuing the use of them, etc.), if such change is made after twelve o’clock (12:00) noon on the day when any such horse race or races is scheduled to run, shall revoke the agency of any duly authorized agent, employee, servant, or representative of Countdown, Inc., to place the full amount of the wager or bet on the horse selected by the patron.
“(4) WEATHER CHANGES.
No change of weather or change of the condition of the track (e. g., fast, sloppy, good, slow, muddy) shall revoke the agency of any duly authorized agent, employee, servant, or representative of Countdown, Inc., to place the full amount *637 of the wager or bet on the horse selected by the patron.
“(5) TIME WITHIN WHICH TO COLLECT WINNINGS AND/OR LOSING TICKETS.
Any patron shall have fourteen days within which to exchange his receipt for either the full amount of his winnings or the losing tickets on the horse or horses which he selected or to claim his refund as provided for in Rule (1)(A) and Rule (6).
“(6) DISCLAIMER OF WARRANTY.
For causes over which Countdown, Inc., its agents, employees, servants, or representatives may have no control (e. g., traffic jams, armed robberies, etc.), Countdown, Inc., its agents, employees, servants, or representatives cannot and do not guarantee that the amount to be placed through the parimutuel pool of an authorized race track on the results of horse races conducted on the grounds of any such authorized race track will be placed in the parimutuel pool and in such event the patron shall be entitled to a refund of the total amount of his wager as well as the ten percent (10%) messenger service fee within the time period set out in Rule (5).”
Countdown accepted monies on the terms, conditions, rules and regulations hereinabove set forth and issued its receipt therefor. The monies were transported to the Fair Grounds, a race track licensed by the Louisiana State Racing Commission, where bets were placed in the parimutuel pool in accordance with the instructions of Countdown’s customers as indicated on the face of the receipt. Though undercover employees of the New Orleans Police Department investigated and engaged Countdown’s services, no agent or employee of Countdown has been arrested and charged with a violation of any state statute nor ordinance of the City of New Orleans. By letter dated December 27, 1973 the District Attorney for the Parish of Jefferson advised counsel for Countdown, Inc., that, at that time, Countdown’s operations were not in violation of LSA-R.S. 14:90 nor was there a parish ordinance declaring such activities illegal. The then District Attorney for the Parish of Orleans expressed the same view relating to LSA-R.S. 14:90 in a letter of January 29, 1974.
The state filed this suit to annul, vacate and forfeit Countdown’s charter and to enjoin it from conducting its business activities. This appeal is from the district court’s judgment dismissing the state’s suit. We affirm.
The state advances two arguments: (1) the business activity of Countdown is the fulfillment of a personal trust by a corporation and prohibited by R.C.C. Art. 441[1] and (2) the acceptance of monies at an off track site to be bet through the parimutuel pool of a licensed race track is de facto off-track betting and in violation of R.S. 4:149 and 4:171.[2]
*638 Countdown’s business activity is not within the office of personal trust prohibition of R.C.C. Art. 441. No trust of any type is established when Countdown accepts monies to be legally bet as directed by its customers. Upon acceptance of monies Countdown does not become vested with any interest, power, title or ownership of the money for the benefit of another nor is a fiduciary relationship created. St. Charles Land Trust, Achille Guibet v. St. Amant, 253 La. 243, 217 So.2d 385, 388 (1968); Succession of Carriere, 216 So.2d 616, 618 (La.App. 4th Cir. 1968). Furthermore, Countdown is clothed with no discretion by its customer—the wagers must, if placed, be placed as directed. As distinguished from a trust where the trustee has title to the principal’s property and is not subject to his principal’s control, Countdown acquires no title to the money of its customer (principal) and is subject to its customer’s (principal’s) control. Defendant is nothing more than a compensated mandatory for the interest of its customer (principal) and the race track where the legal bet is made through the pari-mutuel pool. R.C.C. Art. 2985 et seq.
Countdown accepts no bets or wagers on any horse race. It accepts monies to be bet. Countdown is a disinterested intermediary—it assumes no monetary risk and obligates itself to nothing more than a return of the total amount to be wagered plus its messenger service fee in the event it is prevented by causes over which it has no control from placing the wager as directed. Countdown stands to gain nothing as a result of the outcome of any horse race on which it has placed a customer’s (principal’s) bet. It is abundantly clear that the business activity of Countdown is within the limitations of R.S. 4 -.149 and 4:171. There is no off track betting. Countdown places the wagers of its customers (principals) through the pari-mu-tuel pool upon the grounds or enclosure of the licensee where the horse races are held.
When, for a fee, money is accepted by a disinterested party to be transported and legally bet at a lawful race meeting, such activity does not violate the statutory restrictions of R.S. 4:149 and 4:171, which permit the wagering on horse races in the pari-mutuel pool at licensed tracks and, therefore, contain a legislative exception to the anti-gambling policy of this state as expressed in Article 19 § 8 of the Constitution of 1921 and R.S. 14:90. Though, in effect, Countdown’s messenger service is nothing more than off-track collection points for wagers to be placed at a licensed track, we find no statute nor rule or regulation of the Louisiana State Racing Commission prohibiting such business activity. True, Countdown is presently out of the control of the state, except for meeting statutory tax and other requirements of a domestic corporation; however, Countdown has been around the track several times and the state has given it no handicap. Countdown is inside the rail, at the gate, and off and running at any track licensed by the Louisiana State Racing Commission.
The judgment of the district court is affirmed.
Affirmed.

. “A corporation can not be administrator, guardian or testamentary executor, nor fulfill any other office of personal trust. A corporation can not be imprisoned, for its existence being ideal, nobody can arrest or confine it.”

. Acts 1968, No. 554 § 1.
“The commission may prescribe rules and regulations under which shall be conducted all horse races upon the results of which there is wagering. The commission shall make rules governing, permitting, and regulating the wagering on horse races under the form of mutuel wagering by patrons, known as the ‘pari-mutuel wagering’. Only those persons receiving a license from the commission may conduct this type of wagering, and shall restrict this form of wagering to a space within the race meeting grounds. All other forms of wagering on the result of horse races are illegal, and all wagering on horse races outside the enclosure where horse races have been licensed by the commission is illegal.”
:js # :¡s % sjs
“No person shall directly or indirectly hold any horse race meeting with mutuel pools or pools making wagering on the results, without having first procured a license. No person *638 shall wager upon the results of a horse race, except in the pari-mutuel or mutuol method of wagering when the same is conducted by a licensee and upon the grounds or enclosure of the licensee.
“Whoever violates this section, or any section of this Part for which a penalty is not herein expressly provided, símil be fined not less than five hundred dollars nor more than one thousand dollars, or imprisoned for not less than ten days nor more than six months, or both.’’