RCARTER, Judge.
This matter is before us on a writ of certiorari issued as a result of an application for supervisory writs following an advisory opinion by the Board of Ethics for Elected Officials.

BACKGROUND

This matter arises out of several requests for advisory opinions to the Board of Ethics for Elected Officials (the Board).[1] The requests were submitted by Roy A. Glapion (Glapion) and Citywide Testing and Inspections, Inc. (Citywide). The requests regard the ownership interest of Glapion, son of a New Orleans City Councilman, in Citywide, a corporation primarily engaged in construction materials testing and inspection. Citywide seeks to enter into contracts with various governmental entities in the New Orleans area, including the Sewerage and Water Board of New Orleans.

FACTS

On July 14, 1995, Glapion made the first request to the Board.[2] Glapion’s letter stated that he owned fifty-one percent (51%) of Citywide’s corporate stock and that Citywide wanted to pursue contracts with certain governmental entities.[3] Glapion indicated that he is the son of Roy Glapion, an elected member of the City Council of New Orleans, and is, therefore, a member of Councilman Glapion’s immediate family. As such, Gla-pion sought an advisory opinion from the Board regarding the propriety of Citywide conducting contractual business with certain governmental entities.
The Board responded to the request, stating that LSA-R.S. 42:1113 A of the Code of Governmental Ethics prohibits Citywide, as a corporation in which an immediate family member of a New Orleans City Councilman has a controlling interest,_Jjfrom entering into contracts or transactions under the supervision or jurisdiction of the City of New Orleans. Therefore, the Board concluded that Citywide would be prohibited from pursuing contracts with the City of New Orleans Department of Streets and the Sewerage and Water Board of New Orleans, which are entities over which the City Council of New Orleans exercises supervision or jurisdiction.
On December 11,1995, Citywide requested a second advisory opinion of the Board. The letter stated that certain stock transactions had been made and that Glapion no longer owned the majority of Citywide’s stock, but owned only forty-four percent (44%) of the *1314 stock. Given the change in stock ownership, Citywide requested that the Board render an advisory opinion as to whether it could enter into contracts with the City of New Orleans Department of Streets and the Sewerage and Water Board of New Orleans.
In response, the Board stated that LSA-R.S. 42:1113 A creates a restriction based on whether the immediate family member of the public servant owns a “controlling interest” in a corporation. The Board indicated that “controlling interest” is defined as an interest in excess of twenty-five percent (25%). Because Glapion still held an interest in excess of twenty-five percent (25%), the Board concluded that its original opinion was correct, and Citywide could not enter into contracts with the City of New Orleans Department of Streets or the Sewerage and Water Board of New Orleans.
On January 16, 1996, Citywide submitted a third request for an advisory opinion to the Board. The request sought an opinion on the application of the Code of Ethics for Governmental Employees to a situation where Glapion would no longer own a “controlling interest” in Citywide. It was proposed that Glapion would transfer twenty percent (20%) of the' Citywide stock to an inter vivos trust established for the benefit of his two minor children, which would result in Glapion owning only twenty-four percent (24%) of the Citywide stock. Because Gla-pion’s children were Councilman Glapion’s grandchildren, they were not members of his “immediate family” as defined by LSAjR.S.4 42:1102(13).[4] Given these changes, the letter questioned whether Citywide could enter into the questioned governmental contracts.
In response to this request, the Board pretermitted the issue of whether grandchildren are included within the definition of “immediate family” as used in LSA-R.S. 42:1102(13). The Board opined that, under the situation described, Citywide still would be “controlled” by a member of the immediate family of Councilman Glapion and that, accordingly, LSA-R.S. 42:1113 A prohibited Citywide from entering into any contracts with entities over which the'New Orleans City Council exercises supervision or jurisdiction. In its opinion, the Board stated that Glapion had not “confected a procedure by virtue of which he would dispose of a controlling interest in Citywide” and that the “envisioned transfer of stock to the inter vivos trust does not ... result in a divestiture” of his controlling interest. (Emphasis added.)
Following the final advisory opinion of the Board, Citywide filed an application for supervisory writs with this court, and a writ of certiorari was issued. Citywide’s writ application assigns the following specifications of error:[5]
1. The Board’s opinion conflicts with the Supreme Court decision in Roberts v. Sewerage and Water Board.
2. The Board’s opinion is ultra vires and usurps the proper power of the Legislature.
3. The Board’s opinion conflicts with the Louisiana statutory law governing trusts.
4. The Board’s opinion improperly interprets and applies Louisiana Revised Statutes 42:1113.
5. The Board’s opinion improperly infringes upon the rights of third parties who are not public servants.

PROPRIETY OF THE BOARD’S ADVISORY OPINION

Article 10, § 21 of the 1974 Louisiana Constitution directed the legislature to enact a code of ethics for all officials and employees of the state and its political 15subdivisions and to create one or more boards to administer the code. Pursuant to this mandate, the legislature enacted the Code of Governmental Ethics (the Code). LSA-R.S. 42:1101, et seq.
The Code is not a criminal statute aimed at the apprehension and punishment of persons guilty of public wrongdoing. *1315 Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752, 755 (La.1983). The primary objective of the Code is to prevent not only the actuality of conflicts of interest, but also to prevent the occurrence of those situations that create a perception of conflicts of interest. The Code accomplishes this objective by delineating situations which present too great a danger of a conflict of interest occurring. Fulda v. Louisiana Office of Public Health, 96-0647, p. 2 (La.5/10/96); 673 So.2d 201, 202; In re Beychok, 495 So.2d 1278, 1281 (La.1986). It is not merely wrongdoing, but even the potential therefor, that the Code seeks to avoid. In re Sea Shell, Inc., 509 So.2d 90, 91 (La.App. 1st Cir.1987). For this purpose, the Code identifies certain types of conflicts of interest and prohibits conduct by public officials which would bring these conflicts into being.
LSA-R.S. 42:1113 A addresses prohibited contractual arrangements for public servants and provides as follows:
No public servant, excluding any legislator and any appointed member of any board or commission and any member of a governing authority of a parish with a population of ten thousand or less, or member of such a public servant’s immediate family, or legal entity in which he has a controlling interest shall bid on or enter into any contract, subcontract, or other transaction that is under the supervision or jurisdiction of the agency of such public servant. (Emphasis added.)
LSA-R.S. 42:1102(8) defines “controlling interest” as ownership by an individual or his spouse, either individually or collectively, of an interest which exceeds twenty-five percent (25%) of any legal entity.
The starting point for the interpretation of any statute is the language of the statute itself. Touchard v. Williams, 617 So.2d 885, 888 (La.1993). It is the basic tenet of legislative interpretation that the words of a law are to be given their generally prevailing meaning. LSA-C.C. art. 11; Benoit v. Maco Manufacturing, 93-0396, p. 7 (La.App. 1st Cir. 3/11/94); 633 So.2d 1301, 1305. Moreover, when a law is clear and 16unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. LSA-C.C. art. 9; Tarver v. E.I. Du Pont De Nemours and Company, 93-1005, p. 3 (La.3/24/94); 634 So.2d 356, 358; Roberts v. State Farm Mutual Automobile Insurance Company, 27,501, pp. 4-5 (La.App. 2nd Cir. 11/1/95); 662 So.2d 821, 824; Benoit v. Maco Manufacturing, 633 So.2d at 1305; Bagert v. State, Board of Ethics for Elected Officials, 594 So.2d 922, 923 (La.App. 1st Cir.1992). It is presumed that every word, sentence, or provision in law was intended to serve some useful purpose, that some effect is to be given to each such provision, and that no unnecessary words or provisions were used. Losabia v. Cypress Hospital, 619 So.2d 151, 154 (La.App. 3rd Cir.), writ denied, 625 So.2d 1047 (La.1993); Sanchez v. Sanchez, 582 So.2d '978, 980 (La.App. 1st Cir.1991). The statute may not be extended beyond its obvious meaning. Ronald Adams Contractor, Inc. v. State Department of Transportation and Development, Truck Permit Section, 619 So.2d 1180, 1183 (La.App. 1st Cir.), writ denied, 625 So.2d 178 (La.1993).
In its advisory opinion, the Board determined that, despite Glapion’s proposed transfer of twenty percent (20%) of the Citywide stock to a trust for the benefit of his two children, Citywide still would be “controlled” by a member of the immediate family of Councilman Glapion, and the prohibition in LSA-R.S. 1113 A would be applicable. The Board stated that Glapion had not “con-fected a procedure by virtue of which he would dispose of a controlling interest in Citywide” and that the “envisioned transfer of stock to the inter vivos trust does not ... result in a divestiture” of his controlling interest. We disagree.
A trust is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. LSA-R.S. 9:1731; St. Charles Land Trust, Achille Guibet v. St. Amant, 253 La. 243, 217 So.2d 385, 388 (1968); Succession of Hines, 341 So.2d 42, 45 (La.App. 3rd Cir.1976). No particular language is required to create a trust. It suffices if the instrument |7as a whole reflects *1316 the intent to establish a trust relationship. LSA-R.S. 9:1753; St. Charles Land Trust, Achille Guibet v. St. Amant, 217 So.2d at 389.
In the instant case, under the terms of the proposed trust instrument, Glapion would transfer all of his rights, title, and interest in one hundred shares of Citywide stock to a trust established for the benefit of his two minor children.[6] These shares constitute a twenty percent (20%) interest in the corporation, and the transfer to the trust would leave Glapion with a twenty-four percent (24%) interest in Citywide. The instrument provides that the trust is irrevocable and made under the express condition that Gla-pion would not have a usufruct over the transferred stock. Named as trustee is John Rogers of Chicago, Illinois.
The law is clear that, when a trust is created, title to the property in the trust is transferred to the trustee to be administered by him as a fiduciary for the benefit of another. LSA-R.S. 9:1731 and 1781. In Glapion’s proposed trust, title to the stock would be vested in the trustee, Rogers, who would administer the stock for the benefit of Glapion’s two minor children. Glapion would no longer own the stock transferred to the trust and would have no usufruct over the stock; therefore, he would no longer control the transferred stock. Thus, the Board incorrectly determined that the transfer of stock to the trust would not result in a divestiture of Glapion’s “controlling interest” in Citywide.[7]
| gUnder the clear wording of LSA-R.S. 42:1102(8), “controlling interest” is ownership of an interest which exceeds twenty-five percent (25%) of any legal entity. Had the legislature intended to define the term differently, it certainly could have done so. After the contemplated transfer of the stock to the trust, Glapion would own only twenty-four percent (24%) of the Citywide stock. According to the statutory definition, Glapion clearly would not own a “controlling interest” in Citywide. As a result, under LSA-R.S. 42:1113 A, Citywide would not be prohibited from entering into contracts, subcontracts, or transactions under the supervision or jurisdiction of Councilman Glapion’s agency.[8]

CONCLUSION

For the foregoing reasons, the writ is made peremptory and the decision of the Board is reversed. Costs associated with the writ application, in the amount of $318.00 are assessed against the Board.
WRIT GRANTED; REVERSED.

. Effective January 1, 1997, the Board of Ethics for Elected Officials was eliminated. See Act 64 of the 1996 First Extraordinary Session of the Louisiana Legislature. The successor body is the Louisiana Board of Ethics.

. Citywide subsequently submitted a request for an advisory opinion on the same issue.

.Glapion listed some of the governmental entities, which included the Orleans Parish Board of Levee Commissioners, City of New Orleans Department of Streets, the Sewerage and Water Board of New Orleans, the Regional Transit Authority, the Corps of Engineers, and the New Orleans Convention and Exhibition Center.

. LSA-R.S. 42:1102(13) defines “immediate family" as the public servant’s children, the spouses of his children, brothers, sisters, parents, spouse, and the parents of his spouse.

. Although this opinion does not address each assignment of error individually, it disposes of all issues.

. Glapion’s wife was also a settlor of the trust.

. Citing Glazer v. Commission on Ethics for Public Employees, 431 So.2d 752 (La.1983), the Board argues that Glapion is attempting to use the inter vivos trust to circumvent the prohibitions of the Code. Glazer involved a corporation solely owned by a member of the state mineral board who sold steel products to state mineral lessees. The court found that the actions of the public official's wholly-owned and controlled corporation were his own and not that of a separate person and affirmed the Commission's finding that an unlawful conflict of interest existed.
We find the situation presented in the instant case to be distinguishable from that which existed in Glazer. We note that Glazer involved a public official’s use of a separate entity to perform business with a governmental entity and did not involve the immediate family of a public servant. Additionally, Glazer did not involve LSA-R.S. 42:1113, which is at issue in this case, but dealt with LSA-R.S. 42:1111 C(2)(d) and 42:1115 A. Moreover, the court in Glazer found that Glazer’s actions were expressly prohibited by the Code. In the instant case, however, Glapion’s actions, in transferring stock to a trust, are not prohibited by the Code.

.Cilywide, alternatively, contends that the Board's opinion conflicts with the supreme court's finding in Roberts v. Sewerage and Water Board of New Orleans, 92-2048 (La.3/21/94); 634 So.2d 341, that the Sewerage and Water Board of the City of New Orleans is an "autonomous body.” Citywide reasons that, because the court held that the Sewerage and Water Board is autonomous, it cannot be under the supervision or jurisdiction of the "agency” of Councilman Glapion, i.e., the City of New Orleans. However, given our finding that Glapion does not have a "controlling interest” in Citywide, we find it unnecessary to address this issue.