LKLEES, Chief Judge.
In this suit to change custody and tutorship of a minor child, the biological father, Gregory Salazar (“Mr.Salazar”), appeals the joint custody decree rendered by the trial court, granting the Mr. Salazar and Bessie Hardimon (“Mrs.Hardimon”), the maternal grandmother, joint custody, with Mrs. Hardimon as the domiciliary custodian. He also appeals the award of tutorship to Mrs. Hardimon.

FACTS AND PROCEDURAL HISTORY

Gregory Salazar and Paula Hardimon (“Paula”) were dating in high school when Paula became pregnant. Paula and Mr. Salazar never got married, but Paula gave birth to Jason Gregory Hardimon (“Jason”) on June 7, 1989. Paula died in an automobile accident on November 1, 1990. Jason continued to live with Paula’s mother, Bessie Hardimon, after Paula’s death.
On December 10, 1990, Mrs. Hardimon, filed a Rule for Custody falsely stating that Jason’s father was unknown. A judgment was signed on February 7, 1991, granting Mrs. Hardimon sole custody of Jason. On October 31, 1991, Mrs. Hardi-mon petitioned the court for appointment as Jason’s provisional tutrix, again alleging that his father was unknown. On the same day, the court issued an order appointing Mrs. Hardimon Jason’s provisional tutrix.
| ¡Although Mr. Salazar was not formally served or given notice as to Mrs. Hardi-mon’s application for custody, he testified that he read in the newspaper that Mrs. Hardimon had applied for custody of Jason. With that knowledge, Mr. Salazar did not immediately file a petition to change custody, but he waited four years, filing his petition on May 28,1996. During that four year period, Mr. Salazar’s only financial contribution to Jason’s upbringing was a $60.00 school supply purchase and Mr. Salazar seldom saw his son. Of note, Mr. Salazar’s petition for change of custody and tutorship was filed approximately one month after a substantial settlement was reached on Jason’s behalf.
The matter was tried on November 4, 1998, and a judgment was signed on December 7, 1998, granting Mr. Salazar and Mrs. Hardimon joint custody, with Mrs. Hardimon as the domiciliary custodian, and finding that Mrs. Hardimon had properly performed her duties as provisional tutrix. Mr. Salazar filed a timely devolu-tive appeal.

DISCUSSION

Mr. Salazar lists five assignments of error in this appeal: (1) the judgment *992 awarding custody to Mrs. Hardimon was obtained through fraud and ill practices; (2)the judgment appointing Mrs. Hardi-mon provisional tutrix was obtained through fraud and ill practices; (3) the judgment awarding custody to Mrs. Hardi-mon was obtained without providing notice to the father; (4) joint custody with Mrs. Hardimon as Jason’s domiciliary custodian is not in the child’s best interest; and (5) the trial court erred in determining that Mrs. Hardimon has properly performed her duties as provisional tutrix.
(1) Judgment awarding custody to Mrs. Hardimon was obtained through fraud and ill practices
1 a(2) Judgment appointing Mrs. Hardi-mon provisional tutrix was obtained through fraud and ill practices
(3)Judgment awarding custody to Mrs. Hardimon was obtained without providing notice to the father
Mr. Salazar’s fraud and notice claims need not be decided. In her Rule for Custody and in her application to be appointed provisional tutrix for her grandson, Mrs. Hardimon falsely stated that Jason’s father was unknown. The trial court awarded Mrs. Hardimon sole custody and provisional tutorship based in part on that misleading information.
Any final judgment obtained by fraud or ill practices may be annulled. La.Code Civ. Proc. art. 2004 (West 1999). Four years after Mrs. Hardimon was awarded sole custody of Jason, Mr. Salazar filed a petition to nullify the sole custody decree and to change tutorship. The trial court awarded joint custody to Mr. Salazar and Mrs. Hardimon, effectively nullifying the prior sole custody award to Mrs. Hardi-mon. Hence, Mr. Salazar has, in essence, already obtained a remedy for Mrs. Hardi-mon’s false statements — nullification of the sole custody award.
Now, Mr. Salazar seeks to have the subsequent joint custody decree nullified. However, the joint custody decree was not based on any misleading statements. Mrs. Hardimon’s misleading statements made four years earlier in her Rule for Custody and in her application to be appointed provisional tutrix cannot operate to nullify the very judgments that were rendered to rectify the original sole custody decree, which was awarded based on false statements.
Likewise, an ex parte custody order granted without notice is null and without effect. Guillory v. LaFleur, 469 So.2d 444, 445 (La.App. 3d Cir.1985). Mr. Salazar was not given adequate notice prior to the first custody hearing. However, the sole custody decree awarded to Mrs. Har-dimon at that hearing is |4moot because both Mr. Salazar and Mrs. Hardimon had the opportunity to be heard at a subsequent custody hearing, from which this appeal was taken.
(4)Joint custody with Mrs. Hardimon as Jason’s domiciliary custodian is not in the child’s best interest
In child custody cases, the trial court’s decision is to be afforded great deference on appeal and will not be disturbed absent a clear abuse of discretion. Kroics v. Kroics, 97-911 (La.App. 3 Cir. 2/4/98), 705 So.2d 1302, 1304. The main issue to be decided is which test to apply when a trial court has made a decree of custody and when the parties are a parent and a non-parent.
First, the Court must decide whether the original sole custody award to Mrs. Hardimon was a considered decree. “A considered decree is one for which evidence as to parental fitness to exercise custody is received by the court.” Barnes v. Cason, 25,808 (La.App. 2 Cir. 5/4/94), 637 So.2d 607, 611, writ denied, 94-1325 (La.9/2/94), 643 So.2d 149. If the record is silent as to whether the issue of custody has been previously litigated, the courts may presume that the prior issue was “uncontested” and that it is not a considered decree. Odom v. Odom, 606 So.2d 862, 865 (La.App. 2d Cir.1992), writ denied, 608 So.2d 153 (La.1992).
*993 In this case, Mr. Salazar was not even a party to the original custody proceeding. In fact, the trial court was led to believe that Jason’s father was unknown. Therefore, the trial court heard no testimony as to Mr. Salazar’s parental fitness. The court may presume that Mrs. Hardimon’s original Rule for Custody was uncontested and that it was not a considered decree.
When a parent seeks to modify a non-considered custody decree to the other parent, the parent seeking modification must show: (1) a change in circumstances |Rand (2) that the new custody arrangement would be in the child’s best interest. Myers v. Myers, 561 So.2d 875 (La.App. 2d Cir.1990). In Bergeron v. Bergeron, 492 So.2d 1193, 1199 (La.1986), the court justified this standard of proof, stating that “it is desirable that there be an end of litigation and undesirable to change the child’s established mode of living except for imperative reasons.” Based on the Bergeron rationale, the second circuit has held that this standard of proof also applies in custody disputes between a parent and a non-parent. Hill v. Hill, 602 So.2d 287, 289 (La.App. 2 Cir.1992). Therefore, to change the current custody arrangement, Mr. Salazar bears the burden of proving that there has been a change in circumstances materially affecting Jason’s welfare and that the new custody arrangement would be in the child’s best interest.
Mr. Salazar has failed to prove both of these elements. The only change in circumstances that has occurred since the original custody decree is that Mrs. Hardi-mon’s job has relocated to Tennessee. This is not a change materially affecting Jason’s welfare. Mr. Salazar argues that because Jason now lives in Tennessee, he is being denied the opportunity to have a close meaningful relationship with his son. However, the trial court granted Mr. Salazar joint custody and visitation rights, which will allow him to foster a relationship with Jason.
Mr. Salazar has also failed to prove that awarding him sole custody of Jason is in the child’s best interest. Continuity and a stable environment are important factors to consider in determining what is in a child’s best interest. Cooper v. Cooper, 579 So.2d 1159, 1162 (La.App. 2 Cir.1991). Jason, a ten year old boy, has lived with Mrs. Hardimon all of his life. Mrs. Hardimon has provided a stable and wholesome living environment for the child. Moreover, both Mr. Salazar and |fihis mother testified that Mrs. Hardimon is doing a good job at raising Jason. Joint custody of Jason is clearly in the child’s best interest.
The trial court’s decision was not a clear abuse of discretion; therefore, the joint custody decree is affirmed.
(5) Trial court erred in determining that Mrs. Hardimon properly performed her duties as provisional tu-trix
A trustee may be removed by the proper court for sufficient cause shown. La. R.S. 9:1789 (West 1999). A trust or trustee must act solely in the interest of the beneficiary and must exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property. Hughes v. Burguieres, 276 So.2d 267, 269 (La.1978).
Mr. Salazar argues that Mrs. Har-dimon has mismanaged the funds because she has failed to file a tax return for the interest gained on the trust. Mr. Salazar further alleges that Mrs. Hardimon asked the court for a monthly allowance and has been getting $850.00 per month from the trust fund to support Jason, whereas the child support ruling by the trial court stated that Mrs. Hardimon was to contribute 34 percent of Jason’s support from her own personal funds. Mrs. Hardimon, however, did not know that she was supposed to file a tax return. This was an inadvertent error that could have been made by any person of ordinary prudence in dealing with his own property. Furthermore, although Mrs. Hardimon is receiving a *994 monthly allowance from the trust fund to help support Jason, after Paula’s death, Mrs. Hardimon was forced to secure employment to support Jason. In addition, in calculating Mrs. Hardimon’s and Mr. Salazar’s child support obligations, the trial court considered Jason’s separate income of $12,000 per year. 17Mrs. Hardimon testified that she expends her personal funds on Jason’s behalf and seeks reimbursement from the trial court two times per year.
The trial court, in its oral reasons, stated that Mrs. Hardimon has handled the funds to the court’s satisfaction. The court noted that Mrs. Hardimon goes before the trial judge every six months and that Mrs. Hardimon’s handling of the funds has been a success. Furthermore, the trial court was not completely convinced that Mr. Salazar’s petition for change of custody and change of tutorship was not motivated by an interest in having access to Jason’s money. On the other hand, the trial court was convinced that Mrs. Hardimon’s actions have not been motivated by money. She has acted as a prudent person in executing her duties as a tutrix, and Mr. Salazar has not shown sufficient cause to have Mrs. Hardimon removed as Jason’s provisional tutor.

CONCLUSION

The trial court has not abused its discretion in awarding joint custody to Mr. Salazar and Mrs. Hardimon, with Mrs. Hardimon as the domiciliary custodian and provisional tutor. Mr. Salazar has failed to show a change in circumstances materially affecting Jason’s welfare, and he has failed to show that awarding him sole custody would be in Jason’s best interest. In additon, Mr. Salazar has failed to show sufficient cause to have Mrs. Hardimon removed as provisional tutor. The trial court’s decision is therefore affirmed.
AFFIRMED.