Dear Mr. Marceaux:
You have requested an opinion of the Attorney General, in your capacity as Executive Director of the State Licensing Board for Contractors (Board), regarding the Contractor's Education Trust Fund (Fund). You state that a recently completed audit of the Board reported that the Board failed to properly invest and secure funds held in the Fund. You specifically ask whether the Board maintains fiduciary responsibility over the Fund, which constitutes a private trust managed by an independent Board of Trustees (Trustees).
The statutory provisions comprising the Louisiana Contractor Licensing Law are found at R.S. 37:2150 2173. Section 37:2162
(J) provides the following:
 J. All fines or penalties collected by the board pursuant to this Section for violations of any provision of this Chapter shall, annually, at each audit of the board, be transferred to a separate contractor's educational trust fund to be used for educational purposes as determined by the board.
The Trust Instrument (Instrument) establishing the Fund reflects that it is a private trust created on October 10, 1991, pursuant to R.S. 9:1721 et seq., of the Louisiana Trust Code. The purpose of the Fund is to provide grants for endowed chairs to four-year accredited construction technology schools. The Instrument lists nine colleges and/or universities as recipients/beneficiaries.
R.S. 9:1731 defines a "trust" as follows:
 A trust, as the term is used in this Code, is the relationship resulting from the transfer of title to property to a person to be administered by him as a fiduciary for the benefit of another. (Emphasis added.)
As can be gleaned from the above, the actual title to the property placed in trust is transferred from the settlor to the trustee who administers the property as a fiduciary for the sole benefit of the beneficiaries. See: Read v. U.S. Dept. ofTreasury,169 F.3d 243 (5th Cir. 1999); St. Charles Land Trust,Achille Guibet v. St. Amant, 217 So.2d 385, 253 La. 243 (1968)rehearing denied; Succession of Hines, 341 So.2d 42 (La.App. 3rd Cir. 1976) rehearing denied; and Succession of Carriere,216 So.2d 616 (La.App. 4th Cir. 1969) rehearing denied.
R.S. 9:2061 provides the following with respect to the duties and powers of the trustee:
 The nature and extent of the duties and powers of a trustee are determined from the provisions of the trust instrument, except as otherwise expressly provided in this Code, and, in the absence of any provisions of the trust instrument, by the provisions of this Part and by law.
Our jurisprudence has recognized as axiomatic the principle that a trust and/or trustee must act solely in the interest of the beneficiary and must exercise such care and skill as a man of ordinary prudence would exercise in dealing with his own property. In re Hardimon, 751 So.2d 989 (La.App. 4th Cir. 2000).
A review of the Instrument reflects, in Part I, the provision for the conveyance of property:
 The trust property shall consist of all those properties listed and described in Schedule A (attached) together with such other property as may be added by Settlor or by third persons. _Settlor hereby conveys to trustees, in trust, all of its right, title, and interest in the property listed and described in Schedule A to be held and administered as trust property in accordance with this Trust Instrument. (Emphasis added.)
Part VI, Section 6.1 (a) provides, in pertinent part, the following with respect to the specific powers of the Trustees:
 6.1 (a) Standard. The trustees shall have all of the powers that may be conferred upon trustees under applicable law. If a question should arise as to whether Trustees have a particular power, this Trust Instrument shall be liberally construed as granting such power. Should future changes in the law expand the powers of the trustees, the Trustees shall have those expanded powers. If, however, those powers are in conflict with the provisions of this Instrument (including this Exhibit and other Exhibits to this Instrument), the terms of this instrument shall prevail. . . .
Section 6.2 (b) specifically empowers the Trustees to invest and reinvest the trust property.
Part VII grants additional powers to the Trustees regarding the distribution of trust funds:
 7.2 (a) Distribution. Trust Funds shall be distributed at least annually to the approved Educational Institutions or more frequently should the Trustees see fit.
As can be seen from the above, the Instrument clearly provides that the settlor (i.e., Board) transfers and conveys all of its right, title and interest in the Fund to the Trustees. You advise that the Board has not taken any action to modify the Trust and/or Trust Instrument to transfer fiduciary control over the Fund from the Trustees to the Board. You have also confirmed that the Trustees act independently (from the Board) as fiduciaries for the beneficiaries pursuant to the written declarations of the Instrument. You further state that the Trustees exercise total and independent discretion with regard to the distribution of funds to the various beneficiaries, all in accordance with Section 7.2 (a) of the Instrument. A further review of the Instrument reveals no authority which would unilaterally divest the Trustees of their independent fiduciary responsibility over the Fund.
In Attorney General Opinion No. 00-162, we addressed the issue of whether funds transferred by the Jefferson, Orleans and St. Tammany Parish School Boards to their respective Teachers Health and Welfare Trust Funds were considered held in a fiduciary capacity by the three school boards. Therein, we concluded that, once the school boards' contributions were made to the respective trust funds, they were no longer held in a fiduciary capacity by the school boards. I am enclosing a copy of this opinion for your reference and convenience.
Based on the applicable provisions of the Louisiana Trust Code and the Trust Instrument, in question, the jurisprudence and your representations concerning the Fund and its administration, we are of the opinion that, once the funds are remitted by the Board to the Fund, all of the Board's title and interest in said funds are transferred to the Fund's Trustees.
Accordingly, the Board's fiduciary capacity over the transferred funds ceases.
Henceforth, the Trustees are obligated to perform and execute the terms of the Instrument as a fiduciary for the beneficiaries in accordance with applicable statutory provisions of the Louisiana Trust Code.
We further opine that the reportable findings relating to the investments and collateralization of the Fund should be appropriately addressed by the Trustees.
Should you have any additional questions concerning these matters, please do not hesitate to contact me.
With kindest regards, I am
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: ____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/Rob3/tp
Enc.
DATE REQUESTED: JULY 3, 2001
DATE RELEASED: August 15, 2001
OPINION NUMBER 00-162
May 18, 2000
97 Schools School Districts — Property, Contracts, etc. 100 Schools and School Districts — Teachers, Principals and Superintendent, etc. 103 Schools Schools Districts — Pension Benefits, Teachers Retirement System
R.S. 17:1224, 24:513
Article VII, Section 14 of the Louisiana Constitution of 1974
Qualifying school boards can make contributions of public funds to a trust authorized by R.S. 17:1224. The funds so contributed are not subject to audit pursuant to R.S. 24:513 and the Louisiana Governmental Audit Guide because they are not held in a fiduciary capacity by the school boards.
Dr. Daniel G. Kyle, CPA, CFE Legislative Auditor State of Louisiana 1600 North Third Street P.O. Box 94397 Baton Rouge, LA 70804-9397
Dear Dr. Kyle:
You have requested an opinion of the Attorney General regarding contributions made by the Jefferson, Orleans and St. Tammany Parish School Boards to their respective Teacher's Health and Welfare Funds (Funds). You first ask whether such contributions are legally permissible under the Louisiana Constitution and Revised Statutes. If such contributions are legally permissible, you also ask whether the respective Funds are required to be audited pursuant to R.S. 24:513.
In answer to your first question, I direct your attention to Article VII, Section 14 of the Louisiana Constitution of 1974. Paragraph (A) generally prohibits the funds of the state or any of its political subdivisions (i.e., school boards) from being loaned, pledged or donated to or for any person, association or corporation, public or private. Paragraph (B) provides, in pertinent part, the following:
 (B) Authorized Uses.
 Nothing in this Section shall prevent (2) contributions of public funds to pension and insurance programs for the benefit of public employees.
The authority for the establishment of the Funds in question is found at R.S. 17:1224. It provides:
 § 1224. Alternative means of providing benefits
 A. In addition to an as an alternative to the authority granted by this Part or by any other provisions of law to provide for employee benefits, including but not limited to group insurance, benefits, or services for medical, dental, hospital, and nursing care and other compensation on account of sickness, disability, or death, or any other related benefits, parish or city school boards in parishes or cities having a population of over one hundred thirty-five thousand may establish a trust for these purposes and for the additional purpose of providing professional development programs and benefits for its employees, and may pay, out of monies appropriated and budgeted therefor, part or all of the costs, charges, or contributions necessary for the establishment and administration thereof, as may be determined by the provisions of the trust.
 B. With the establishment of the trust, the parish or city school board in parishes or cities having a population over one hundred thirty-five thousand shall be considered a person and/or employer in creating the trust for the benefit of employees.
 C. The trust shall provide for the actuarial soundness thereof and may provide for the method of determining the eligibility of participants, the schedule of benefits, procedures for making and paying claims, the use of group insurance policies, the source or sources of funding, the administration of the trust, and related matters.
 D. For the purpose of this Section the terms "person" and "employer" shall be defined as provided in R.S. 9:1921 and 1922.
This office has previously recognized the establishment of these Funds in Attorney General Opinion Nos. 84-372 and 92-428. I am enclosing copies of these opinions for your reference and convenience.
Considering the above authorities, it is the opinion of this office that qualifying school boards may pay out of monies appropriated and budgeted therefor, part or all of the costs, charges or contributions necessary for the establishment and administration of Teachers Health and Welfare Funds. We believe the payments are authorized pursuant to Article VII, Section 14(B)(2) and R.S. 17:1224. We turn now to your second question.
As you are aware, the powers and duties of the Legislative Auditor are found at R.S. 24:511, et seq. Section 513 provides, in pertinent part, the following:
 § 513. Powers and duties of legislative auditor; audit reports as public records; assistance and opinions of attorney general; frequency of audits; subpoena power
 (A) (1)(a) Subject to Paragraph (3) of this Subsection, the legislative auditor shall have authority to compile financial statements and to examine, audit, or review the books and accounts of all political subdivisions of the state, collectively referred to as the "auditee" In addition to the authority granted above, the legislative auditor shall have access to and be permitted to examine all papers, books, accounts, records, files, instruments, documents, films, tapes, and any other forms of recordation, including but not limited to computers and recording devises, of all auditees. This access shall not be prohibited by Paragraph (3) of this Subsection.
 * * *
 (3) The financial statements of school boards . . . hereinafter collectively referred to as "local auditee", shall be audited or reviewed by licensed certified public accounts subject to Paragraphs (5) and (6) of this Subsection.
 * * *
 (5)(a) In lieu of examinations of the records and accounts of any office subject to audit or review by the legislative auditor, the legislative auditor may, at his discretion, accept an audit or review report prepared by a licensed certified public accountant, provided that such audit or review is performed in accordance with generally accepted governmental auditing standards and the Louisiana Governmental Audit Guide, which is to be jointly published by the legislative auditor and the Society of Louisiana Certified Public Accountant's Governmental Accounting and Auditing Committee, and further provided that the legislative auditor has approved the engagement letter in accordance with this Section. The Louisiana Governmental Audit Guide is a standard for audits and reviews of auditees within Louisiana and shall be produced by the society and the legislative auditor, with input from the Louisiana School Board Association, and any other interested parties. For the limited purposes of providing the audits and reviews as provided in this Subsection, the certified public accountant shall have the access and assistance privileges afforded the legislative auditor in R.S. 24:513(E) and (H). However, the certified public accountant shall comply with any and all restrictions imposed by law and on documents, data, or information deemed confidential by law and furnished to the certified public accountant during the course of the audit or review.
 * * *
 (6) The legislative auditor shall have the authority to prescribe the terms and conditions of any such audit or review conducted by a licensed certified public accountant and shall be authorized to approve said terms and conditions prior to its commencement and to require the office subject to audit to present said terms and conditions to him for approval. (Emphasis added.)
Accordingly, audits conducted by licensed certified public accountants of school boards must be performed in accordance with generally accepted governmental auditing standards and the Louisiana Governmental Audit Guide (Guide). Section 326.01 of the Guide, revised January, 2000, provides:
 326 Audit Scope and Standards
 .01 The scope of local entity audits must include all funds and account groups and all offices, departments, agencies, or other units of the entity that collect or disburse funds. The audit must cover funds held in a fiduciary capacity, funds held by an employee of the entity in the scope of his public employment, and all other public funds, whether donated, self-generated, et cetera. The audit should encompass, at a minimum, a legal entity. (Emphasis added.)
As can be gleaned from the above, the scope of local entity audits must include funds held in a fiduciary capacity by the local entity. Accordingly, if the funds in question are held in a fiduciary capacity by the school boards in accordance with Section 326.01 of the Guide, then the funds are subject to audit under R.S. 24:513 and the Guide. Conversely, if the funds are not held in a fiduciary capacity pursuant to Section 326.01, they would not be subject to audit under R.S. 24:513. We focus now on the essential characteristics of the Funds.
The nature of the Funds, and the manner in which they are administered are described in a letter dated April 25, 2000, from John J. Weiler, a copy of which is enclosed for your reference. The letter reflects that the three Funds are established pursuant to collective bargaining agreements that were negotiated between the respective school boards and unions. In general, the trust documents provide for either joint administration by a trust board consisting of an equal number of school board appointed and union appointed trustees, or a board consisting of solely union appointed trustees. The trustees act pursuant to written declaration of trusts, independently, as Plan fiduciaries. The trustee's decisions are based sold on what is in the best interest of the Plan Participants, as opposed to what is in the best interest of the unions or school boards.
Participants are members of the respective collective bargaining agreements, but participation is not limited solely to union membership.
Typically, the collective bargaining agreements provide that the school boards are obligated to contribute to the applicable Fund a specified yearly amount for each bargaining unit member. The collective bargaining agreement does not restrict or place conditions upon the use of the amounts contributed. The trustees exercise total and independent discretion as to the utilization of contributions in providing the specified welfare benefits to Plan Participants. The yearly contributions are co-mingled with other monies that the Funds are holding, and benefit programs are paid from the whole.
The most common types of programs available to Plan Participants are prescription drugs, dental, vision and professional development. The Funds provide "supplemental benefits" to their participants which are either not provided by the school boards for all employees, or enhanced benefits from those provided by the school boards.
Once the school board contributions are made to the respective Funds, the trust documents establishing the Funds prohibit the reversion of contributions to the respective school boards. In other words, the contributions no longer belong to the school boards, but rather belongs to one of the respective Funds which are independent entities administered by their own boards of trustees.
Based on the above information, it would appear that the Funds in question are not held in a fiduciary capacity by the respective school boards as envisioned by Section 326.01. Accordingly, they would not be subject to audit under R.S. 24:513 and/or the Guide.
Trusting this adequately responds to your inquiries, I am
Very truly yours,
 RICHARD P. IEUYOUB Attorney General
 By: _____________________________ ROBERT E. HARROUN, III Assistant Attorney General
RPI/REH,3/sfj