709 So.2d 662 (1998)
In re HOWARD MARSHALL CHARITABLE REMAINDER ANNUITY TRUST.
No. 97-CC-1718.
Supreme Court of Louisiana.
March 4, 1998.
Concurring Opinion March 10, 1998.
Rehearing Denied May 8, 1998.
Order Dissenting from Denial of Rehearing May 8, 1998.
William E. Shaddock, Henry A. McCall, Herman A. White, III, Lake Charles, for Applicant George School.
A.J. Gray, III, and Leslie Q. Knox, Lake Charles, for The Corporation of Haverford College.
Russell J. Stutes, Jr., Lake Charles, for Yale Law School.
Edwin K. Hunter, Richard D. Moreno, and Timothy O'Dowd, Lake Charles, for Finley L. Hilliard, Trustee of the Howard Marshall Charitable Remainder Annuity Trust.
Kenneth M. Wright, Lake Charles, and Mack E. Barham and Robert E. Arceneaux, *663 New Orleans, for Respondent E. Pierce Marshall, Executor of the Succession of J. Howard Marshall, II.
Concurring Opinion of Justice Lemmon March 10, 1998.
KNOLL, Justice.[*]
We granted writs in the instant case to determine whether Louisiana has jurisdiction over the succession of a Texas domiciliary, whose only property at the time of his death consisted of undisbursed income from two Louisiana inter vivos trusts. For the following reasons, we determine that Louisiana does not have jurisdiction over the succession of J. Howard Marshall, II.

FACTS AND PROCEDURAL HISTORY
Decedent, J. Howard Marshall, II, (Mr. Marshall) was an extremely wealthy attorney and businessman who was domiciled in Houston, Texas. He died on August 4, 1995. In the years preceding his death, Mr. Marshall transferred all of his personal assets into a series of inter vivos trusts in an attempt to avoid the necessity for probate. The vast majority of Mr. Marshall's assets were transferred to the J. Howard Marshall, II, Living Trust (Living Trust). In addition, Mr. Marshall created a second trust, the Howard Marshall Charitable Remainder Annuity Trust (Charitable Trust) to fund his charitable pledges and donations. The Charitable Trust was funded by an interest bearing note in the amount of $2,950,000, payable to J. Howard Marshall, II, by his son, E. Pierce Marshall.
Mr. Marshall was an income beneficiary under the terms of both trust agreements. The Living Trust provided: "During and throughout [Mr. Marshall's] lifetime, Trustee shall pay over to [Mr. Marshall] sufficient income to maintain [Mr. Marshall's] standard of living." The Charitable Trust states:
The Trustee shall pay to J. Howard Marshall, II (sometimes referred to as the Recipient) in each taxable year of the Trust during the Recipient's life an annuity in the amount of One Hundred Ninety-four Thousand Seven Hundred Dollars ($194,700).
Both trusts contained a provision authorizing the trustee to invade the corpus or principal of the trust if necessary to maintain the income streams provided for in the trusts.
The instant dispute concerns the distribution of the principal of the Charitable Trust. By the terms of the trust agreement, following the death of Mr. Marshall the principal was to be distributed as follows:
DISTRIBUTION TO CHARITY. Upon the death of the Recipient, the Trustee shall distribute all of the then principal and income of the trust (other than any amount due Recipient or Recipient's estate under ¶¶ 2 and 3, above) to Haverford College, Haverford Pennsylvania, George School, Bucks County, Pennsylvania, and Yale University, New Haven, Connecticut (hereinafter referred to as the Charitable Organizations) in the following proportions:

Haverford College 40.678%
George School 25.424%
Yale University 33.898%

Provided, however, that if any charitable pledge from the Donor exists to any of the Charitable Organizations, the Trustee shall make the distribution in such a manner to satisfy that pledge or pledges with the balance distributed in the proportions specified.
Following Mr. Marshall's death, the trustee of the Charitable Trust, Finley L. Hilliard, a resident of Lake Charles, Louisiana, took preliminary measures to distribute the corpus of the trust to the Charitable Organizations. Mr. Hilliard contacted the Charitable Organizations in an attempt to determine the extent of outstanding pledges, if any, which were due each organization by Mr. Marshall. George School responded that Mr. Marshall owed pledges in excess of $1.1 million dollars at the time of his death, and Haverford College reported between $3.8 and $5.3 million in outstanding pledges. Yale University responded that Mr. Marshall owed no outstanding pledges to that organization. The combined pledges of George School and Haverford College easily exceed the corpus of the charitable trust.
Mr. Hilliard then filed a "Petition for Instructions" in the 14th Judicial District Court in Calcasieu Parish, denying that the Charitable Trust was legally bound to George School and Haverford College for the claimed pledges. In his petition, Mr. Hilliard requested that the corpus of the Charitable Trust be distributed in accordance with the stated percentages without any privilege to the alleged pledges made by Mr. Marshall to Haverford College and George School. Mr. Hilliard further stated that it was Mr. Marshall's intention that the corpus of the trust would fully extinguish any and all pledges he had made to the Charitable Organizations.
George School, Haverford College, and Yale University responded to Mr. Finley's petition. Haverford College asserted that its pledges were valid, and further responded *664 that under the provisions of the trust, the outstanding pledges should be paid first, with only the remainder, if any, to be distributed according to the percentages. Haverford College further expressly reserved the right to enforce any pledges not extinguished by payment against Mr. Marshall's estate. Similarly, George School responded by averring the validity of its pledges, and by reserving the right to pursue the unpaid balance of remaining pledges against Mr. Marshall's estate. George School and Yale University did not oppose the distribution of the trust corpus in accordance with the percentages provided in the Charitable Trust.
In addition to the Charitable Organizations, Mr. Hilliard had named as a party defendant "The Succession of J. Howard Marshall, II, a succession being administered in Calcasieu Parish Louisiana in the 14th Judicial District Court docket number 32,699." (Louisiana Succession).[1] The Louisiana Succession had been opened when E. Pierce Marshall and Finley L. Hilliard, co-executors, filed a "Petition for Probate of Foreign Testament and Codicil" on August 8, 1995.[2] The executors averred that Mr. Marshall owned property in Calcasieu Parish at the time of his death, and that the 14th Judicial District Court therefore had jurisdiction to open Mr. Marshall's succession under La.Code Civ.P. art. 2811. The executors filed a detailed descriptive list of the property owned by Mr. Marshall at the time of his death. Because Mr. Marshall had allegedly transferred all of his property to his inter vivos trusts, the descriptive list stated that the only property in Mr. Marshall's estate consisted of the following income earned by the trusts, but undisbursed at the time of his death:

 PROPERTY SITUATED IN
 CALCASIEU PARISH LOUISIANA
 1. Accrued but unpaid income due
 from the J. Howard Marshall,
 II, Living Trust, a Trust in the
 Parish of Calcasieu, State of
 Louisiana: $142,613.62
 2. Accrued but unpaid income due
 from the Howard Marshall
 Charitable Remainder Annuity
 Trust, a Trust in the Parish of
 Calcasieu, State of Louisiana: $ 17,481.73

The Louisiana Succession responded to Mr. Hilliard's petition for instructions, supporting the position taken by Mr. Hilliard and denying any liability to the Charitable Organizations for outstanding pledges. The Louisiana Succession further asserted that, in the event that J. Howard Marshall, II, made any charitable pledges to the Charitable Organizations, such pledges were solely to be discharged by the assets of the Charitable Trust, and were not liabilities of the Louisiana Succession. The Louisiana Succession then prayed for declaratory relief, requesting that the court issue a judgment specifically enumerating the rights of George School and Haverford College with respect to both the Charitable Trust and the Louisiana Succession.
Both Haverford College and George School responded to the answer of the Louisiana Succession by filing, among other exceptions, a declinatory exception of lack of jurisdiction, asserting that Louisiana had no jurisdiction to open the succession of J. Howard Marshall, II, a Texas domiciliary. The exception to jurisdiction was denied by the trial court and the Third Circuit Court of Appeal denied writs. This Court granted the George School's application for supervisory writs and remanded to the Third Circuit for briefing and opinion on the issue of jurisdiction. In re: Howard Marshall Charitable Remainder Annuity Trust, 96-CC-2372 (La.12/06/96), 684 So.2d 404.
In an unpublished opinion, the Third Circuit affirmed the trial court's denial of the exception of jurisdiction, and held that jurisdiction was proper under La.Code Civ.P. art. 2811. From this judgment, George School applied for writ of certiorari which was granted by this Court. In re: Howard Marshall Charitable Remainder Annuity Trust, 97-CC-1718 (La.10/17/97), 701 So.2d 1349.

LAW & ANALYSIS
Jurisdiction is the legal power and authority of a court to hear and determine an action *665 or proceeding involving the legal relations of the parties, and to grant the relief to which they are entitled. La.Code Civ.P. art. 2811 provides for jurisdiction in succession proceedings as follows:
A proceeding to open a succession shall be brought in the district court of the parish where the deceased was domiciled at the time of his death.
If the deceased was not domiciled in this state at the time of his death, his succession may be opened in the district court of any parish where:
(1) Immovable property of the deceased is situated; or,
(2) Movable property of the deceased is situated, if he owned no immovable property in the state at the time of his death.
It is undisputed that Mr. Marshall was a domiciliary of Harris County, Texas at the time of his death. Furthermore, it is undisputed that the only basis for Louisiana's jurisdiction over Mr. Marshall's succession is the alleged existence of undisbursed income from the Louisiana Trusts of which he was a beneficiary. Therefore, the linchpin issue in the instant case is whether the undisbursed trust income listed in the descriptive list is movable or immovable property of the deceased situated in Calcasieu Parish for purposes of establishing the proper jurisdiction for Mr. Marshall's succession.
We initially note that the lower courts erroneously focused their determination of jurisdiction on the basis that the trusts were sited in Louisiana. The Third Circuit framed the issue as "whether a Louisiana court has subject matter jurisdiction over the estate of a non-domiciliary whose estate is composed of nothing but property held by trusts formed in the state and whose principal officers reside in the state." The trial court, in its oral reasons for denying the exception of lack of jurisdiction stated: "Well, again, the trust property is here. The trustee is here, and the trust instrument invokes Louisiana law...."
There can be no doubt that Louisiana has jurisdiction over the trust at issue in the instant case. Nevertheless, the fact that the trust is sited in Louisiana does not necessarily mean that Mr. Marshall's succession was properly opened in Louisiana. Put simply, the property held by the trust of which the decedent was merely an income beneficiary is not relevant for purposes of jurisdiction, while the property owned by the decedent at the time of his death is. Therefore, the nature of Mr. Marshall's alleged property interest in the two trusts bears exploration.
As noted by this Court in St. Charles Land Trust v. St. Amant, 253 La. 243, 217 So.2d 385 (1969), the classification of the beneficiary's interest in a trust in terms of recognized property concepts raises difficult questions. This classification has been the subject of much controversy in the common law, as well as in the courts of this state. This Court has had considerable discussion on the issue of whether beneficiaries have a property interest in the corpus of the trust or merely an incorporeal right to enforce the terms of the trust. See Reynolds v. Reynolds, 388 So.2d 1135 (La.1979).
The respondent, Louisiana Succession, cites this Court's holding in St. Charles Land Trust v. St. Amant, 253 La. 243, 217 So.2d 385 (1969), in support of its position that the undisbursed income is immovable property owned by Mr. Marshall, given that the corpus of the Living Trust is composed of mineral leases. The Third Circuit also cited St. Charles Land Trust for the proposition that the interest of a beneficiary of a trust which holds title to immovables is also an immovable.
In St. Charles Land Trust we held that the principal beneficiary's interest in a trust whose corpus was composed of immovable property is an incorporeal immovable for Louisiana inheritance tax purposes.[3] Nevertheless, *666 that case is easily distinguished from the instant case. The beneficiary's interest in St. Charles Land Trust concerned the nature of the interest of a principal beneficiary, while Mr. Marshall's interest was that of an income beneficiary.[4]
The principal interest in a trust is the right to receive the corpus of the trust itself, at a future time, in accordance with the provisions of the terms of the trust. If the corpus of the trust is composed of immovable property, the principal interest therefore could be fairly characterized as a future right to immovable property. As a result, St. Charles Land Trust classified the principal beneficiary's interest in a trust composed of immovables as immovable property under La.Civ.Code arts. 470 and 471.[5] The interest of an income beneficiary, however, is significantly different. An income beneficiary has no future or present interest in the corpus of the trust, instead having only an interest in the income generated by the corpus, and subsequently disbursed under the terms of the trust. The income beneficiary has only a future interest in income, regardless of whether the corpus of the trust is immovable property, such as a mineral royalty, or whether it is movable property, such as a financial instrument.
The distinction between a principal beneficiary and an income beneficiary is important in that the legal effects which flow from the two interests form the basis for the classification of those interests as either incorporeal movables or incorporeal immovables. The principal beneficiary's interest in a trust which holds immovable property was classified as an incorporeal immovable because it was a future right to an immovable thing. Generally, under La.Civ.Code art. 470, "rights and actions that apply to immovable things are incorporeal immovables." An income beneficiary, on the other hand, has no right to immovable property. In short, the interest of an income beneficiary does not apply to immovable property under Article 470, and it is therefore properly classified as an incorporeal movable under La.Civ.Code art. 475, which provides:
All things, corporeal or incorporeal, that the law does not consider as immovables, are movables.
Additionally, we note that the legal effect that flows from the interest of an income beneficiary is a right to income, or money, which is movable property.[6] Accordingly, we find that the interest of an income beneficiary is properly characterized as an incorporeal movable under La.Civ.Code art. 473, which provides:
Rights, obligations, and actions that apply to a movable thing are incorporeal movables. Movables of this kind are such as *667 bonds, annuities, and interests or shares in entities possessing juridical personality.
Interests or shares in a juridical person that owns immovables are considered as movables as long as the entity exists; upon its dissolution, the right of each individual to a share in the immovables is an immovable.
We note that while a trust is not a "juridical person" in the strict sense of the word, the first paragraph of Article 473 is plainly illustrative rather than exclusive. We find that the interest of an income beneficiary is analogous to a bond or annuity, in that the stream of payments are made pursuant to the terms of an agreement, in the instant case, the trust instrument.
The entire purpose for Mr. Marshall's creation of the trusts was to divest himself of any ownership interest in the property of the trust corpus. Mr. Marshall had only the right to receive an income stream from the two trusts. He had no independent property interest in the immovables constituting the trust corpus itself. Although the trustee could liquidate a portion of the corpus of the trust to insure the income stream guaranteed by the trust, this was not a right vested in the beneficiary.
Furthermore, in St. Charles Land Trust, this Court was concerned with the transfer of the beneficiary's interest to her heirs. In the instant case, we note that any beneficiary interest that Mr. Marshall had in the two trusts terminated at the moment of his death, and his interest as a continuing income beneficiary could not be passed to his estate. La.R.S. 9:1964.[7] Put simply, Mr. Marshall's continuing beneficiary interest itself did not form a part of his succession. All that remains in Mr. Marshall's patrimony is the incorporeal movable right to receive the income which accrued while his rights as an income beneficiary still existed.

UNDISBURSED INCOME
While the right to receive the undisbursed income had vested in Mr. Marshall and subsequently in his heirs, title to the funds at issue has remained with the trustee. The undisbursed income merely represents an obligation that the trustee owed Mr. Marshall, both as result of his fiduciary status as trustee, and his obligations under the terms of the trust itself. La.R.S. 9:2061.[8] Whether or not these funds actually exist, in trust accounts or otherwise, is irrelevant. Until the funds were disbursed in accordance with the trust code and the provisions of the trusts, they were not the property of Mr. Marshall. In Reynolds, supra, this Court noted:
Title to the property vested in the trustee. LSA-R.S. 9:1731. The undistributed income from the trust was under the control and dominion of the trustee. It accrued to the trustee during the term of the trust as a civil fruit unseparated from the corpus of the trust. LSA-C.C. art. 489 and former art. 499. Ms. Reynolds had no right to this money until the trustee decided to distribute it. The undistributed income did not fall into the community.
Reynolds, supra at 1142. (Footnotes omitted.)
In an opinion in which he concurred in part and dissented in part, Chief Justice Dixon reasoned:
It is significant that the will does not vest her, as a trust beneficiary, with any rights. Instead her rights, or interests exist only as implied correlatives to the duties imposed on the trustee, to whom title to the trust property was conveyed.
* * * * * *
Mrs. Reynolds' interest thus consisted of the right to receive such amounts as the trustee determined to be necessary for her proper maintenance, at intervals to be determined by the trustee. These disbursements *668 were to be made by the trustee from funds accruing to the trust as income and, if judged necessary by the trustee, from the trust corpus itself. It is important to note that the income derived from the trust property, or its fruits, was received and entirely controlled by the trustee, subject only to his duty to provide for each beneficiary's support. Mrs. Reynolds, on the other hand, had no right to these funds, only a right to sums necessary for her support.
Reynolds, supra at 1145-6.
Similarly, in the instant case, we hold that Mr. Marshall did not have an independent property right, or real right, to the undisbursed income. See La.Civ.Code art. 476, comment (b). His incorporeal rights to the undisbursed income existed only in contrast to the trustee's fiduciary obligations under the Louisiana Trust Code and the terms of the trusts. See La.Civ.Code art. 1757.[9] In short, when he died, Mr. Marshall did not own $160,000 in Calcasieu Parish. Mr. Marshall had merely a limited right to require the trustee to perform his obligation under the terms of the trust. This credit-right was an incorporeal movable which formed a part of Mr. Marshall's patrimony. La.Civ.Code art. 473, 475.[10] Under Louisiana law, the patrimony is a coherent mass of existing or potential rights and liabilities attached to a person for the satisfaction of his economic needs. The patrimony, as a universality of rights and obligations, is ordinarily attached to a person until termination of personality. Yiannopoulos, Louisiana Civil Law Treatise, Property § 194, 195 (1991). Accordingly, until the instant of his death, the right to collect income under the terms of the trust agreement attached to the person of Mr. Marshall in Harris County, Texas. While it could be argued that Mr. Hilliard's obligation to perform under the terms of the trust was situated in Calcasieu Parish, such obligation belonged to the patrimony of Mr. Hilliard, not Mr. Marshall.
We find that the concept of mobilia sequuntur personam, immobilia situa ("movables follow the person, immovables their locality") is useful in determining the situs of the incorporeal movable rights held by Mr. Marshall. The above phrase means simply that movable property is regarded as being located at the legal domicile of its owner. Although merely a legal fiction, this concept is particularly applicable to incorporeal movables, whose very nature makes the determination of their location problematic.[11] In Blodgett v. Silberman, 277 U.S. 1, 48 S.Ct. 410, 72 L.Ed. 749 (1928), the United States Supreme Court stated:
At common law the maxim "mobilia sequuntur personam" applied. There has been discussion and criticism of the application and enforcement of that maxim, but it is so fixed in the common law of this country and of England, in so far as it relates to intangible property, including choses in action, without regard to whether they are evidenced in writing or otherwise and whether the papers evidencing the same are found in the state of domicile or elsewhere, and is so fully sustained by cases in this and other courts, that it must be treated as settled in this jurisdiction whether it approve itself to legal philosophic test or not.
Blodgett, supra at 277 U.S. 9-10, 48 S.Ct. at 413-14.
*669 Mobilia sequuntur personam has been held applicable to incorporeal movables by Louisiana courts. In United Gas Corp. v. Fontenot, 129 So.2d 748, 241 La. 488 (1961), this Court explained:
This concept found its way into most legal systems, including the common law, and these courts, in an analogous but much later development, classifying intangible assets and interests in the same category as tangible movables, have, traditionally, under the mobilia maxim, held their situs to be the domicile of the owner of the intangible and usually taxable there, unless there existed a specific law to the contrary. Thus, under this fiction, identification and association in the mind of intangibles with their owners (as in the case of movable tangibles and personalty) gave them, in the law, a `situs' at the legal domicile of the owner.
United Gas Corporation, supra at 753. (Emphasis original). See also, Sugar v. State Through Collector of Revenue, 142 So.2d 401, 243 La. 217 (1962); Campbell v. Bagley, 276 F.2d 28 (5th Cir.1960).
The concept of mobilia sequuntur personam is well suited to determining the situs of incorporeal movables for succession purposes. Initially, we note that although not controlling for jurisdictional purposes, La. Civ.Code art. 3532 provides that the succession of movables is governed by the law of the decedent's domicile. The policy behind this rule is noted in comment (c) of that article: "the domiciliary rule recognizes the obvious, which is that, of all the states potentially involved in a multistate succession, the last domicile of the testator has a more legitimate claim to have its law applied than either the state where the movable property was located at the time of death or, even less, the state where the testament was made." As noted by Professor Symeonides,[12] in his comprehensive article on conflicts of succession law:
Whatever their other differences, most systems on both sides of the Atlantic agree on at least one pointthat succession to movables should be governed by the personal law of the deceased at the time of death. This is an old rule which, nevertheless, has withstood the test of time. From a practical viewpoint, this rule makes possible the uniform treatment of the estate as a single unit, thus facilitating orderly planning and enhancing predictability. From a functional viewpoint, this rule honors the justified expectations of the testator and, at the same time, strikes the best possible balance between the potentially competing claims of various states in regulating his succession.
Symeonides, Exploring the "Dismal Swamp": The Revision of Louisiana's Conflicts Law on Successions, 47 La. Law Rev. 1029 (1987).
Similarly, this Court recognizes that, in the context of a succession, policies of comity among our sister states are persuasive. In choosing between the domicile of the decedent and the location of the decedent's debtors, who may be spread across multiple jurisdictions, we find that the maxim mobilia sequuntur personam properly places the situs of an incorporeal movable at the domicile of the decedent. Accordingly, we hold that where a decedent held incorporeal movable property at the time of his death, the situs of the incorporeal movable property for purposes of La.Code Civ.P. art. 2811 is the decedent's domicile.
The respondent, Louisiana Succession, has consistently contended that jurisdiction over the succession is proper in Louisiana because Louisiana would have jurisdiction to adjudicate a dispute between the beneficiary and the trustee. While this may be true, it cannot be overemphasized that the issue in the case sub judice is not whether Louisiana has jurisdiction over a dispute involving the trustee and the beneficiary. The issue is the location of the decedent's property within the Parish of Calcasieu for the purposes of opening his succession there.[13] The fact that the *670 Calcasieu trustee owed an obligation to the decedent, standing alone, is insufficient to justify a finding of jurisdiction under La. Code Civ. P. art. 2811. To so hold would allow the succession of a foreign decedent to be opened in Louisiana based on the fortuity that one of the decedent's debtor's is then located in Louisiana. Such a rule would inhibit several of the underlying policies of succession law, namely, to facilitate orderly planning, to enhance predictability, and to avoid piecemeal litigation with regard to successions.

CONCLUSION
For the foregoing reasons, we find that Mr. Marshall owned no property, movable or immovable, which was situated in Calcasieu Parish. Accordingly, we hold that the Louisiana Succession was improperly opened in a court which lacked jurisdiction under La. Code Civ.P. art. 2811. The judgment of the district court, overruling the exception of lack of jurisdiction is reversed, and set aside, and this case is remanded to the district court for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
LEMMON, J., assigns additional concurring reasons.
LEMMON, Justice, concurring.
The lower courts erroneously treated the jurisdiction issue in this case as one of subject matter jurisdiction. There is no doubt that the district court in Calcasieu Parish had original jurisdiction over the subject matter of a succession proceeding. La. Const. art. V, § 16(A). The proper objection should have been lack of jurisdiction over property under La.Code Civ. Proc. art. 8, since a succession proceeding is essentially a proceeding in rem as to the property of the decedent located within the state.[1]See 1 Robert A. Casad, Jurisdiction in Civil Actions § 3.06 (1991). Inasmuch as the basis for filing the succession of a Texas domiciliary in Louisiana was the assertion that succession property was located in this state, then the proper jurisdictional inquiry apparently would be under La.Code Civ. Proc. art. 8. Because the property which was the basis for asserting jurisdiction had its situs in Texas, the Louisiana action was properly dismissed.
LEMMON, Justice, dissenting from denial of rehearing.
The real issue presented in this case is whether Louisiana has in rem jurisdiction over property belonging to the succession of the decent, a Texas domiciliary, on the basis that the asset is located in Louisiana. The succession asset at issue is a debt due to the decedent by the trust which he established and of which he was an income beneficiary. The trust derived its income from mineral royalties.
In rem jurisdiction is governed by La.Code Civ.Proc. art. 8, which provides that "[a] court which is otherwise competent under the laws of this state has jurisdiction to enforce a right in, to, or against property having a situs in this state, claimed or owned by a nonresident."[1] (emphasis added). Since jurisdiction in rem is based upon the legal situs of the property, the court applies the rules with respect to situs in each particular case. With regard to incorporeals, the term "situs" is simply a shorthand for the place whose law is for independent reasons applicable to one set of facts or another. Robert A. Leflar et al., American Conflicts Law § 183 (4th Ed. 1988).[2]
*671 The situs of incorporeal movable property, "if not evidenced by a negotiable instrument or corporation stock certificate, is the state having jurisdiction over the debtor." La.Code Civ.Proc. art. 8, Official Revision Comment (c) citing Restatement of Conflict of Laws §§ 108, 51 cmt. (b) (1934). This comment to Article 8 closely tracks the language in the Uniform Probate Code, which deems a debt to be domiciled where the debtor resides.[3] Because of the complex issues presented, most jurisdictions, either by statute or jurisprudentially, have recognized the principle set forth in the Uniform Probate Code that the situs of an intangible debt for succession purposes is the debtor's domicile.
The need to recognize the debtor's domicile as a proper jurisdiction for an ancillary succession is supported by several factors. First, if a foreign succession representative would seek to enforce the debt in any jurisdiction other than the debtor's domicile, the effort generally would be met with an exception of lack of personal jurisdiction. Second, a debt is only of value to the extent it can be enforced and collected; the law of the jurisdiction that governs such enforcement should be applied in determining its situs for jurisdictional purposes. Third, the state in which a debt is collected has a taxable interest for the purpose of applying its inheritance tax laws, and the power to tax should likewise be accompanied with the power to apply that state's laws and to exercise jurisdiction. See Hildebrand v. City of New Orleans, 549 So.2d 1218, 1226-27 (La.1989) (discussing potential of multijurisdictional problems presented by intangibles); Leflar, supra, (noting the United States Supreme Court's view that a debt has a taxable situs at the domicile of the debtor).
Given these factors, the application of the ancient doctrine of mobilia sequuntur personam relied on by the original opinion in this matter to find that a Louisiana court lacked jurisdiction over an intangible debt having strong Louisiana connections is erroneous. Indeed, application of that ancient principle overlooks the reality of the modern debtors-creditor relationship. See Leflar, supra, (pointing out the antiquated nature of the concept mobilia sequuntur personam).
In the present case, the debt owed by the Calcasieu trust to the Texas-domiciled decedent constitutes incorporeal movable property having a situs in this state and "claimed" by a non-resident, and thus falls within the ambit of La.Code Civ.Proc. art. 8. The absence of a provision in La.Code Civ.Proc. art. 2811's succession-specific application of Article 8 does not preclude the exercise of in rem jurisdiction. Article 2811 is simply a venue provision; Article 8 is the jurisdiction provision, and Article 8 controls. Under Article 8, in rem jurisdiction exists in Louisiana.
NOTES
[*] Johnson, J., not on panel. Rule IV, Part 2, Sec.3.
[1] Probate proceedings are also pending in Probate Court No. 3, Harris County Texas, Docket No. 276,815-402, entitled "Estate of J. Howard Marshall, II, Deceased."
[2] Mr. Hilliard has since resigned as a co-executor of the Louisiana Succession.
[3] But see, Justice Barham's well-reasoned dissent in St. Charles Land Trust, asserting that the principal beneficiary's interest was an incorporeal movable, stating:

The majority has erred by disregarding the legal personality of the trust and by treating the mineral leases owned by the trust as the `object' of the beneficiary's interest. The majority has destroyed the entity of the trust, which is the only and real `object' of the beneficiary's interest, and has incorrectly treated the mineral leases owned by the trust as the `object' of the beneficiary's interest. It is true that the ownership of the mineral leases which is the right vested in the trust is an incorporeal immovable right, but this is not the right vested in the beneficiary. The majority has found her right to be ` * * * an incorporeal right enforceable at law'. The beneficiary does not own the mineral leases, nor does she possess any other immovable right in them while the trust exists. I believe this reasoning alone adequately fixes her interest as an incorporeal movable, but this conclusion is buttressed by the use of analogy in the application of Article 474. That article, being merely illustrative of incorporeal movables, necessarily includes the beneficiary's interest in a trust, which is analogous to ` * * * shares or interests in banks or companies of commerce, or industry or other speculations, although such companies be possessed of immovables depending upon such enterprises'.
St. Charles Land Trust, supra at 391-2.(Emphasis original.)
[4] For an interesting discussion of the need for distinction between principal and income beneficiaries, see Chief Justice Dixon's concurrence/dissent in Reynolds v. Reynolds, 388 So.2d at 1144:

[T]he Louisiana Trust Code makes it clear that two separate interests are involved: a right to some or all of the income produced by the corpus, in accordance with the conditions provided by the trust instrument, and a right to receive the corpus itself, as owner at a future time, also as provided by the terms of the trust.
[5] In 1978, La.Civ.Code art. 470 replaced former Arts. 470 and 471. The new article provides:

Rights and actions that apply to immovable things are incorporeal immovables. Immovables of this kind are such as personal servitudes established on immovables, predial servitudes, mineral rights, and petitory or possessory actions.
[6] Money is a corporeal movable. See Yiannopoulos, Louisiana Civil Law Treatise, Property § 148, n. 2, (1991).
[7] La.R.S. 9:1964 provides:

An interest in income terminates upon the death of the designated beneficiary, or at the expiration of the period of his enjoyment if the interest is for a period less than life. At the termination of the income interest, accumulated or undistributed income shall be paid to the beneficiary or his heirs, legatees, assignees, or legal representatives, except as otherwise provided in this code.
[8] Note that the remedies that a beneficiary may obtain against the trustee are limited by the Louisiana Trust Code. See La.R.S. 9:2221, 9:2231, et seq.
[9] See Litvinoff, The Law of Obligations, § 1.1:

In the technical terminology of the civil codes, however, the word "obligation" means a legal bond that binds two persons in such a way that one of them, the creditor or obligee, is entitled to demand from the other, the debtor or obligor, a certain performance.
[10] See, Litvinoff, supra note 6, § 1.5:

It has been shown that, in its technical sense, an obligation gives the obligee a credit-right. That is so to the point that, in the obligee's perspective the obligation is a credit-right. Such a right differs substantially from a real right in spite of the fact that both credit-rights and real rights are part of a person's patrimony, that is, they share a patrimonial nature. A real right requires only one subject, the holder, who exerts a direct and immediate power over the thing which is the object of the right. A credit-right, on the other hand, is just one end of an obligation and as such presupposes an active subject, the creditor or obligee, and a passive one, the debtor or obligor.
[11] Contrast the situs of incorporeal immovables, which are easily located at the place of the immovable property which they affect.
[12] Judge Albert Tate Professor of Law, Louisiana State University Law Center; Reporter, Conflicts Revision, Louisiana State Law Institute.
[13] We note the Louisiana executor's intention, stated by counsel at oral argument, that the Louisiana Succession shall be the primary succession of Mr. Marshall.
[1] The jurisdiction articles in the Code of Civil Procedure do not expressly cover succession proceedings. La.Code Civ. Proc. art. 2811 is a venue article, specified by Article 2811 as a provision for venue which is not waivable, and does not provide the basis for jurisdiction.
[1] La.Code Civ.Proc. art. 5251 broadly defines property as "all classes of property recognized under the laws of this state: movable or immovable, corporeal or incorporeal."
[2] Professor Leflar further notes that "[a] simple debt owed to a decedent is deemed to be an asset having a situs where the debtor is located, for the purpose of sustaining administration of the decedent's estate at that place," and, an "[a]ction can be brought on such a claim by the local administrator at any place where jurisdiction can be acquired over the debtor." Id. at § 206 n. 1.
[3] Uniform Probate Code § 3-201 provides:

(a) Venue for the first informal or formal testacy or appointment proceedings after a decedent's death is:
(1) in the [county] where the decedent had his domicile at the time of his death; or
(2) if the decedent was not domiciled in this state, in any [county] where property of the decedent was located at the time of his death.
(b) Venue for all subsequent proceedings within the exclusive jurisdiction of the Court is in the place where the initial proceeding occurred, unless the initial proceeding has been transferred as provided in Section 1-303 or (c) of this section.
(c) If the first proceeding was informal, on application of an interested person and after notice to the proponent in the first proceeding, the Court, upon finding that venue is elsewhere, may transfer the proceeding and the file to the other court.
(d) For the purpose of aiding determinations concerning location of assets which may be relevant in cases involving non-domiciliaries, a debt, other than one evidenced by investment or commercial paper or other instrument in favor of a non-domiciliary is located where the debtor resides or, if the debtor is a person other than an individual, at the place where it has its principal office. Commercial paper, investment paper and other instruments are located where the instrument is. An interest in property held in trust is located where the trustee may be sued. (emphasis added).