# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

December 31, 2020

Lyle W. Cayce
Clerk

No. 19-30200

DOCTOR STEPHEN D. COOK, In his capacity as Co-Trustee of Marshall Heritage Foundation,

Plaintiff–Appellee,

v.

PRESTON L. MARSHALL, In his capacity as Co-Trustee of Peroxisome Trust,

Defendant–Appellant.

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:17-CV-5368

Before OWEN, Chief Judge, and BARKSDALE and DUNCAN, Circuit Judges.

PRISCILLA R. OWEN, Chief Judge:*

Stephen Cook, trustee of a charitable trust, sued the trustee of another trust, Preston Marshall, alleging that Preston was blocking payments the trust was required to make to Cook's charitable trust. The parties filed cross-

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-30200

motions for summary judgment, and the district court ruled for Cook. We affirm.

**I**

The facts in this case are undisputed. The Marshall family inherited a significant amount of wealth from the late oil tycoon J. Howard Marshall. Elaine Marshall, the widow of one of J. Howard Marshall's sons, had two children: Pierce and Preston Marshall. Stephen Cook was a longtime acquaintance of the Marshall family and served as trustee on several Marshall family foundations. For decades, the Marshall family distributed large sums of money to charity through the Marshall Heritage Foundation and its predecessors. The trustees of the Marshall Heritage Foundation included Elaine, Pierce, Preston, and Cook. In 2011, Elaine created the Peroxisome Trust (Peroxisome) as a vehicle to donate $100 million to the Marshall Heritage Foundation. Peroxisome's trust instrument made Pierce and Preston its co-trustees and required the trustees to "pay to the Marshall Heritage Foundation an annuity amount equal to 6.647126% of the initial net fair market value of all property transferred to the trust, valued as of the date of the transfer."

After significant disagreements between Pierce and Preston, the trustees of the Marshall Heritage Foundation and Peroxisome planned to split each trust in two. This planned division was unanimously approved by the trustees of the Marshall Heritage Foundation. Shortly after, a Louisiana state court authorized the division of both the Marshall Heritage Foundation and Peroxisome upon a majority vote of their respective trustees. Under this plan, each half of Peroxisome would fund half of the split Marshall Heritage Foundation.

In 2014, as part of the planned division, the Marshall Heritage Foundation split into the Marshall Legacy Foundation and The Marshall

No. 19-30200

Heritage Foundation (TMHF).  Each successor foundation received half of the assets and obligations of the original Marshall Heritage Foundation.  Preston, Cook, and Elaine served as co-trustees of the Marshall Legacy Foundation. Pierce, Cook, and Elaine served as co-trustees of TMHF.  Pierce blocked Peroxisome from similarly splitting.  From April 2014 through June 2016, the Peroxisome trustees approved payments equal to half what it owed to the original Marshall Heritage Foundation to the Marshall Legacy Foundation and half to TMHF.  In June 2016, Preston stopped authorizing payments from Peroxisome to TMHF and the Marshall Legacy Foundation.

Cook, as trustee of TMHF, asserts these payments were mandatory because TMHF is an income beneficiary of Peroxisome as the successor of the original Marshall Heritage Foundation.  Preston counters that the payments were no longer required because the original Marshall Heritage Foundation no longer exists.  In 2017, Cook, as a trustee of TMHF, filed suit against Preston, as a trustee of Peroxisome, seeking an order directing Preston to continue approving Peroxisome's payments to TMHF.  Cook and Preston filed cross-motions for summary judgment in the district court.  The district court ruled in Cook's favor, ordered Preston to authorize payments from Peroxisome to TMHF, and held Preston had breached his fiduciary duties.  Preston appealed the decision and received a stay of the district court's order pending this appeal.

## II

Because this is an action brought under diversity jurisdiction, we apply the substantive law of Louisiana to this case.[1]  "We review a summary judgment de novo, applying the same legal standards as the district court."[2]

---

[1] *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78-80 (1938).

[2] *Prospect Cap. Corp. v. Mut. of Omaha Bank*, 819 F.3d 754, 756-57 (5th Cir. 2016) (citing *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015)); *see also*

No. 19-30200

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  When we review a summary judgment, "[t]he evidence and all inferences must be viewed in the light most favorable to the non-movant."[4]

## III

We must decide whether TMHF is an income beneficiary of Peroxisome to determine if Peroxisome is obligated to make payments to TMHF.  Cook argues that the income Peroxisome owed to the original Marshall Heritage Foundation was an asset of the original foundation because the payments were "certain and quantified as to timing and amount,"  and that such an asset was transferable.  Cook asserts that the future income was also a transferable asset and that it was divided when the original foundation was divided, with half of it going to TMHF.  Thus, Cook maintains, TMHF is an income beneficiary of Peroxisome.

Preston argues that TMHF is not a beneficiary of Peroxisome because TMHF is not named in Peroxisome's trust instrument.  Further, Preston asserts, even if the interest the original Marshall Heritage Foundation had in the income from Peroxisome was an asset, the Peroxisome trust instrument prohibited the original foundation from transferring its interest.  Finally, Preston argues, according to the plain wording of the trust instrument, when the original Marshall Heritage Foundation ceased to exist, the trustees needed to unanimously agree on a new charitable organization to donate the payments

---

*Patel v. Tex. Tech Univ.*, 941 F.3d 743, 747 (5th Cir. 2019) (citing *Ezell v. Kan. City S. Ry. Co.*, 866 F.3d 294, 297 (5th Cir. 2017)).

[3] FED. R. CIV. P. 56(a).

[4] *Germain v. US Bank Nat'l Ass'n as Tr. for Morgan Stanley Mortg. Loan Tr. 2006-7*, 920 F.3d 269, 272 (5th Cir. 2019) (citing *FDIC v. Dawson*, 4 F.3d 1303, 1306 (5th Cir. 1993)).

No. 19-30200

to. They did not. So, Preston concludes, TMHF is not an income beneficiary of Peroxisome.

## A

In order to decide if the interest the original Marshall Heritage Foundation had in payments from Peroxisome was transferred to TMHF, we must first determine if the interest was a transferable asset.

The payments from Peroxisome were an asset of the original Marshall Heritage Foundation. They are an asset because "the interest of an income beneficiary [of a trust] is properly characterized as an incorporeal movable" under Louisiana law.[5] An incorporeal movable is an asset under Louisiana law.[6]

This asset was also transferable. Under Louisiana law, "[a] beneficiary may transfer or encumber the whole or any part of his interest unless the trust instrument provides to the contrary."[7] Here, contrary to Preston's contentions, nothing in the Peroxisome trust instrument prohibits its beneficiary from transferring or encumbering its interest. Preston argues that only the trustees can choose the beneficiary, but this assertion is only true under the terms of the trust if the original Marshall Heritage Foundation ceases to be a charitable organization. That clause does not otherwise affect the original Marshall Heritage Foundation's or any chosen beneficiary's ability to transfer its interest. Accordingly, the interest in payments from Peroxisome was a transferable asset of the original Marshall Heritage Foundation.

---

[5] *In re Howard Marshall Charitable Remainder Annuity Tr.*, 709 So. 2d 662, 666 (La. 1998).

[6] *See Messersmith v. Messersmith*, 86 So. 2d 169, 174 (La. 1956) (concluding that an incorporeal movable piece of property is an asset).

[7] LA. STAT. ANN. § 9:2001 (1964).

No. 19-30200

Because the interest in the payments was a transferable asset, TMHF could be the income beneficiary of Peroxisome if the original Marshall Heritage Foundation transferred that asset to TMHF.[8]

## B

Having decided that the interest the original Marshall Heritage Foundation possessed in payments from Peroxisome was a transferable asset, we must determine what interest the original Marshall Heritage Foundation transferred to TMHF. Under LA. STAT. ANN. § 9:2030, "[t]he division of a trust shall be based on the fair market value of the assets of the trust on the effective date of the division and need not result in a uniform interest in each asset."[9] Here, before the division of the original Marshall Heritage Foundation, the trustees agreed to "divide and distribute" half of the original trust's "assets and obligations" to the Marshall Legacy Foundation and half to TMHF. Therefore, TMHF received half of the original Marshall Heritage Foundation's interest in payments from Peroxisome.

We must now decide whether the interest the original Marshall Heritage Foundation transferred to TMHF ceased to exist when the original Marshall Heritage Foundation ceased to exist. A trust's beneficiary can transfer or encumber only its interest in the trust property, not the trust's property.[10] "The beneficiary's 'interest' in the trust consists of [only] the right to receive income or principal or both."[11] A trust instrument "may include any conditions" on a beneficiary's interest "that are not contrary to law or good morals."[12]

---

[8] *See David v. Katz*, 83 F. Supp. 2d 736, 738 (E.D. La. 2000).

[9] LA. STAT. ANN. § 9:2030 (2001).

[10] *Read v. U.S. ex rel. Dep't of Treasury*, 169 F.3d 243, 249 (5th Cir. 1999) (per curiam).

[11] 11 EDWARD E. CHASE, JR., LOUISIANA CIVIL LAW TREATISE: TRUSTS § 9:2 (2d ed. 2009).

[12] LA. STAT. ANN. § 9:2271 (2009).

No. 19-30200

Here, the Peroxisome trust instrument states:

> If the Marshall Heritage Foundation is not an organization described in [26 U.S.C.] §§ 170(c), 2055(a), and 2522(a) at the time any payment is to be made to it, the Trustee shall instead distribute such payments to one or more organizations described in §§ 170(c), 2055(a), and 2522(a) as the Trustee shall select, and in such proportions as the Trustee shall decide, from time to time, in the Trustee's sole discretion.

Preston argues this language means that when the original Marshall Heritage Foundation ceased to exist, the trustees were required to agree unanimously on a new charitable organization to donate the payments to, and because that did not occur, TMHF is not an income beneficiary of Peroxisome.

However, the language Preston cites from the Peroxisome trust instrument addresses only tax issues, and specifically what happens when the beneficiary falls out of Internal Revenue Code compliance. The language does not address what happens when the beneficiary is divided. Indeed, the provision is copied from Revenue Procedure 2007-45, which sets forth language required to be included in a charitable lead annuity trust instrument.[13] Preston offers no authority—and this court has found none—that supports the proposition that such a clause controls the transferability of beneficiary interests or what occurs when a beneficiary ceases to exist or divides itself under state law. The interest the original Marshall Heritage Foundation transferred to TMHF did not cease to exist when the original Marshall Heritage Foundation ceased to exist. TMHF succeeded the original Marshall Heritage Foundation as a beneficiary of Peroxisome.

But even if the interest the original Marshall Heritage Foundation had in Peroxisome was nontransferable or ceased to exist when the original Marshall Heritage Foundation ceased to exist, our conclusion would be the

---

[13] Rev. Proc. 2007-45, 2007-2 C.B. 90-91.

same. In construing Louisiana trusts, "the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy."[14] Here, the settlor of Peroxisome named the original Marshall Heritage Foundation as its beneficiary. The trust instrument is silent on selecting a new beneficiary if the original Marshall Heritage Foundation cannot be the beneficiary for any reason besides tax status. Because TMHF and the Marshall Legacy Foundation are the successor trusts to the original Marshall Heritage Foundation directly resulting from the original foundation's division under state law and there are no competing candidates as successor beneficiaries, they are also the logical replacements for the previous beneficiary. Thus, TMHF would still be an income beneficiary of Peroxisome.

## IV

Preston contends that "the portion of the [d]istrict [c]ourt's order requiring Preston to effect future distributions to . . . TMHF 'for the term of the Peroxisome Trust' [constitutes] error." Preston argues that "[t]he trust instrument continues to authorize the co-trustees to choose a new beneficiary from time to time" and therefore, the court order contradicts the plain language of the trust instrument.

The district court ordered the following: "Marshall is directed in the future, for the term of the Peroxisome Trust, to effect *required* future distributions from the Peroxisome Trust to TMHF." Because the district court only ordered that future distributions that are *required* to go to TMHF as the successive beneficiary of the original Marshall Heritage Foundation be paid to TMHF, it necessarily leaves open the possibility that there could be another

---

[14] *Richards v. Richards*, 408 So. 2d 1209, 1211 (La. 1981) (citing *Lelong v. Succession of Lelong*, 164 So. 2d 671, 674 (La. App. 3d Cir. 1964)).

beneficiary besides TMHF under the terms of the trust instrument. The district court did not err in its order.

## V

Finally, we address whether Preston breached his fiduciary duty as trustee by refusing to issue required distributions to TMHF. A trustee owes "the very highest possible fiduciary responsibility" to the beneficiary of the trust.[15] This duty includes "administer[ing] the trust solely in the interest of the beneficiary."[16] If a trustee fails to pay a trust beneficiary as required by the trust instrument without good cause, the trustee fails to administer the trust in the interests of the beneficiary.[17] This failure is a breach of trust.[18]

Here, Preston blocked millions of dollars in disbursements to TMHF required by the Peroxisome trust instrument, causing TMHF to fall behind on its binding pledge to Tulane University. Without justification, this would be an obvious breach of fiduciary responsibility. Preston offers a justification: giving the money to TMHF would or could result in disastrous tax consequences for Peroxisome and its beneficiaries. Preston points to two reasons why these potential consequences exist. Each is considered in turn.

## A

Preston argues that TMHF is not or might not be a tax-qualified entity. He points out that the Peroxisome trust instrument forbids disbursements to entities that are not tax-qualified, and that giving money to such an entity would cost Peroxisome and its beneficiaries significantly. The reasoning behind Preston's argument that TMHF might not be a tax-qualified entity is not entirely clear outside of Elaine's alleged control over TMHF, though he

---

[15] *In re Succession of Dunham*, 408 So. 2d 888, 901 (La. 1981).
[16] LA. STAT. ANN. § 9:2082(A) (2001).
[17] *See* LA. STAT. ANN. § 9:2090(A) (2001).
[18] LA. STAT. ANN. § 9:2081 (1964).

appears to argue it as a separate ground for not distributing the payments to TMHF.

Regardless of what his argument might be, it appears to be an argument devised after the fact. TMHF's trust instrument requires it to be a tax-qualified entity. Preston conceded twice in this litigation that TMHF is a tax-qualified entity. Moreover, although Preston stopped approving payments to TMHF in 2016, neither he nor his tax expert looked to see if TMHF was on the IRS's list of tax-qualified organizations until June 2018. Finally, TMHF is now on the IRS's list of tax-qualified organizations. Thus, TMHF is clearly a tax-qualified organization, and Preston has been aware of that fact for years. This argument does not justify Preston's refusal to approve Peroxisome payments to TMHF.

**B**

Preston also argues that his refusal to approve the payments to TMHF was justified because Elaine's control over TMHF could cause Peroxisome to become a grantor trust and thus incur a massive tax burden. Preston argues that since Elaine was the donor to Peroxisome, her having control over the money she donated would cause her to be the owner of those funds under the grantor trust provisions of the Internal Revenue Code. To evince Elaine's control, Preston points to the fact that Elaine has served as president of TMHF, and that TMHF has not adopted a resolution to stop her from voting on the disbursement of funds received from Peroxisome. These points are immaterial.

Elaine cannot be considered the owner of TMHF due to her alleged control of TMHF under 26 U.S.C. § 674. Under 26 U.S.C. § 674(b)(4), it does not matter if a grantor has complete control over a trust so long as the income and corpus must go to charitable causes compliant with 26 U.S.C. § 170(c). Here, it is undisputed that TMHF exists solely for charitable purposes pursuant to § 170(c). Therefore, Elaine cannot be an owner of TMHF for

No. 19-30200

federal income tax purposes. Since Elaine cannot be the owner of TMHF for federal income tax purposes, Preston could not justifiably withhold payment to TMHF on this basis.

Thus, Preston breached his fiduciary duty by withholding Peroxisome's required payments to TMHF.

\*   \*   \*

For these reasons, we AFFIRM the district court's judgment.